■ INLAND VALE FARM COMPANY et al., Appellants, v PANA-
GIOTIS G. STERGIANOPOULOS et al., Respondents. — In a proceed-
ing pursuant to CPLR article 78 to review a resolution of the
respondent North Salem Planning Board approving a site devel-
opment plan submitted to it by respondent Cambridge Associ-
ates for development of a commercial and office center on prop-
erty it owned in the Town of North Salem, petitioners appeal
from a judgment of the Supreme Court, Westchester County
(Marbach, J.), dated July 15, 1983, which, *inter alia,* upheld the
resolution and dismissed the petition.

Judgment reversed, on the law, without costs or disburse-
ments, petition granted, determination of the North Salem
Planning Board annulled, and matter remitted to the board for
the preparation of an environmental impact statement (EIS)
and such further proceedings, consistent with the State Envi-
ronmental Quality Review Act (SEQRA), as it deems appropri-
ate.

On or about September 1, 1982, the North Salem Planning
Board issued a negative declaration (a determination that a
proposed action would not have a significant effect on the
environment) with respect to the proposed construction by re-
spondent Cambridge Associates of a commercial and office cen-
ter to be located on a 4.23-acre tract of commercially zoned land
at the intersection of State Route 116 (Titicus Road) and June
Road (formerly Route 124) in the Town of North Salem. On that
same date, the board also approved a site development plan for
the proposed project.

Petitioners commenced the instant proceeding pursuant to
CPLR article 78 to set aside the site development plan approval
on the ground that the board's negative declaration was not
issued in accordance with the requirements of SEQRA (ECL 8-
0101 *et seq.*) and the associated regulations of the Commissioner
of Environmental Conservation (6 NYCRR part 617). They
contended that the record before the board established that the
proposed commercial development may have a significant effect
on the environment. Therefore, consistent with the require-
ments of SEQRA, an EIS should have been required.

Special Term held that the board's negative declaration of
environmental significance was not arbitrary and capricious
and dismissed the petition. This appeal ensued.

The primary question with which we are concerned on this
appeal is whether the board, in issuing its resolution, complied
with the procedural requirements of SEQRA. While recognizing
that we may not substitute our judgment for that of the board

(see *Matter of Cohalan v Carey,* 88 AD2d 77, 80, app dsmd 57 NY2d 672), we are compelled to answer this question in the negative. SEQRA imposes on all agencies an obligation to file an EIS for any proposed action "which may have a significant effect on the environment" (ECL 8-0109, subd 2). Responsible agencies are directed to determine "[a]s early as possible in the formulation of a proposal * * * whether an environmental impact statement need be prepared for the action" (ECL 8-0109, subd 4). The Commissioner of Environmental Conservation is vested with the authority to promulgate regulations to implement the provisions of SEQRA (ECL 8-0113). The commissioner lists in 6 NYCRR 617.11 (a) the relevant criteria which are considered indicators of significant effect on the environment. In order for this court to determine that the approving agency has complied with the requirements of SEQRA, the record must disclose that the agency has taken a " 'hard look' " at the relevant areas of environmental concern and has made a " 'reasoned elaboration' " of the basis of its determination (*H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 232, quoting from *Kleppe v Sierra Club,* 427 US 390, 410, n 21; *Maryland-National Capital Park & Planning Comm. v United States Postal Serv.,* 487 F2d 1029, 1040; *City of Rochester v United States Postal Serv.,* 541 F2d 967, 973; *Glen Head — Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484, 492). We further note that there is a relatively low threshold for requiring an EIS (*Matter of Save the Pine Bush v Planning Bd.,* 96 AD2d 986, 987, app dsmd and mot for lv to app den 61 NY2d 668; *Matter of Schenectady Chems. v Flacke,* 83 AD2d 460).

In concluding that the environmental impact in this case meets the EIS threshold, our analysis turns on our determination in *Matter of Rye Town/King Civic Assn. v Town of Rye* (82 AD2d 474, apps dsmd 55 NY2d 747, mot for lv to app dsmd 56 NY2d 985), that literal compliance with both the letter and spirit of SEQRA is required and substantial compliance will not suffice (see, also, *Matter of Environmental Defense Fund v Flacke,* 96 AD2d 862). Respondents seek to distinguish *Matter of Rye Town (supra)* from the facts of the instant case on the ground that in the former the board concluded that SEQRA did not apply while at bar the board expressly stated that the act governed its determination. In light of respondents' concession that only substantial compliance with SEQRA is evidenced by the record, its effort to distinguish *Matter of Rye Town (supra)* is unavailing.

Concededly, the board, during the period when it was considering Cambridge Associates' site development plan, examined many environmental factors such as sewage, drainage, erosion,

aesthetics, traffic control and public safety. There was before the board an environmental assessment form which indicated that surface or groundwater quality would be affected by the development and a comprehensive engineering report prepared by a consulting firm retained by Cambridge Associates which included a discussion of solid waste and drainage, sewage and water facilities, and erosion control. Nevertheless, as we noted in *Matter of Rye Town* (*supra,* p 481): "The act requires more than careful consideration of the environmental impacts of a proposed project. It requires consideration of such alternatives to various aspects of the project as might result in amelioration of environmental problems caused thereby". A serious question is posed on the instant record with respect to whether runoff from the development's parking lot and waste from its sewage facilities might contaminate the Titicus River which flows through the subject parcel and into the Titicus Reservoir. In light of the serious impact such contamination may have on the supply of drinking water, we find that the board's declaration that the proposed commercial project would not have an impact on the environment was arbitrary and capricious, and we further find that the project may have a significant effect on the environment. Accordingly, an EIS is required. Mollen, P. J., Gibbons, Bracken and Niehoff, JJ., concur.