■ CAMBRIDGE ASSOCIATES et al., Respondents-Appellants, v INLAND VALE FARM COMPANY et al., Appellants-Respondents. —In a libel action, the defendants separately appeal from so much of an order of the Supreme Court, Westchester County (Rubenfeld, J.), entered June 15, 1984, as denied those branches of their respective motions pursuant to CPLR 3211 (a) (7) which sought dismissal of plaintiffs' second cause of action alleging slander to property, and plaintiffs cross-appeal from so much of that same order as dismissed their first, third and fourth causes of action, alleging libel, tortious interfer-

ence with contractual and precontractual relations, and intentional infliction of emotional distress respectively.

Order modified, on the law, by granting those branches of defendants' motions which were. to dismiss plaintiffs' second cause of action. As so modified, order affirmed, with one bill of costs to defendants appearing separately and filing separate briefs.

On August 16, 1983, Westchester County's *Reporter-Dispatch* newspaper reported that defendant Charles Mandelstam believed that the sewage disposal system of an office and shopping center which plaintiffs proposed to build in North Salem could increase nitrate levels and "lead to the development of cancer-causing materials in water supplies". Mandelstam, a North Salem attorney and partner in the defendant Inland Vale Farm Co., was reported to have based his "layman's opinions" upon conversations with an engineer who had studied the impact the proposed center would have upon the local environment. The remarks attributed to Mandelstam appeared in the newspaper shortly after the Inland Vale Farm Co. had initiated a proceeding pursuant to CPLR article 78 to review a resolution of the North Salem Planning Board, approving plaintiffs' plans for the proposed development *(see, Inland Vale Farm Co. v Stergianopoulos,* 104 AD2d 395, *affd* 65 NY2d 718). Several days later, the *Reporter-Dispatch* reported a denial by the engineer of any mention in the study or in conversations with Mandelstam that high nitrate levels in the water could lead to the development of cancer-causing materials.

Plaintiffs alleged that Mandelstam's reported statements "falsely described" his conversations with the engineer, and defamed plaintiffs' business by "falsely and maliciously cast-[ing] plaintiffs as a source and propagator of cancer-causing agents in the local water supply system".

Plaintiffs' first cause of action was properly dismissed by Special Term, insofar as it alleged libel per se, because the statement complained of failed to impugn the basic integrity or creditworthiness of plaintiffs' business *(see, Ruder & Finn v Seabord Sur. Co.,* 52 NY2d 663, 670-671; *Drug Research Corp. v Curtis Pub. Co.,* 7 NY2d 435; *Hamlet Dev. Co. v Venitt,* 95 AD2d 798, *affd* 60 NY2d 677). Since the reported remarks were directed at plaintiffs' product, that is, the proposed development, plaintiffs could maintain an action for disparagement, but only if malice and special damages were alleged *(see, Ruder & Finn v Seaboard Sur. Co., supra).*

Plaintiffs' second cause of action, denominated as one for slander to property, was found by Special Term to have been sufficiently pleaded. We disagree. " '[S]pecial damages * * * must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts' " *(Tanenbaum v Anchor Sav. Bank,* 95 AD2d 827, quoting from *Lincoln First Bank v Siegel,* 60 AD2d 270, 279-280; *Drug Research Corp. v Curtis Pub. Co., supra; Matherson v Marchello,* 100 AD2d 233, 235). Here, plaintiffs alleged that the defamatory statement "was a factor" which delayed the granting of permission to commence the project, thereby increasing various construction costs, causing $1,000,000 in damages. Such round figures, with no attempt at itemization, must be deemed to be a representation of general, and not special, damages *(see, Drug Research Corp. v Curtis Pub. Co., supra; Matherson v Marchello, supra).*

Plaintiffs' third cause of action to recover damages for tortious interference with contractual and precontractual relations failed to allege sufficient facts to make out a claim that defendants, by improper means, interfered with plaintiffs' relationship with its lessee, the United States Postal Service *(see, Guard-Life Corp. v Parker Hardware Mfg. Corp.,* 50 NY2d 183). Finally, the allegations in plaintiffs' fourth cause of action are insufficient to make out a claim of intentional infliction of emotional distress *(see, James v Saltsman,* 99 AD2d 797). Gibbons, J. P., Weinstein, Eiber and Kooper, JJ., concur.