CUBBY, INC., a Corporation d/b/a Skuttlebut, and Robert G. Blanchard, Plaintiffs,

v.

COMPUSERVE INC., d/b/a Rumorville, and Don Fitzpatrick, individually, Defendants.

No. 90 Civ. 6571 (PKL).

United States District Court, S.D. New York.

Oct. 29, 1991.

Kayser & Jaffe, New York City (Leo Kayser, of counsel), for plaintiffs.

Jones, Day, Reavis & Pogue, New York City (Leslie Mullady, of counsel), for defendants.

## ORDER AND OPINION

LEISURE, District Judge:

This is a diversity action for libel, business disparagement, and unfair competition, based on allegedly defamatory statements made in a publication carried on a computerized database. Defendant CompuServe Inc. ("CompuServe") has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, CompuServe's motion is granted in its entirety.

## *Background*

CompuServe develops and provides computer-related products and services, including CompuServe Information Service ("CIS"), an on-line general information service or "electronic library" that subscribers may access from a personal computer or terminal. Subscribers to CIS pay a membership fee and online time usage fees, in return for which they have access to the thousands of information sources available on CIS. Subscribers may also obtain access to over 150 special interest "forums," which are comprised of electronic bulletin boards, interactive online conferences, and topical databases.

One forum available is the Journalism Forum, which focuses on the journalism industry. Cameron Communications, Inc. ("CCI"), which is independent of CompuServe, has contracted to "manage, review, create, delete, edit and otherwise control the contents" of the Journalism Forum "in accordance with editorial and technical standards and conventions of style as established by CompuServe." Affidavit of Jim Cameron, sworn to on April 4, 1991 ("Cameron Aff."), Exhibit A.

One publication available as part of the Journalism Forum is Rumorville USA ("Rumorville"), a daily newsletter that provides reports about broadcast journalism and journalists. Rumorville is published by Don Fitzpatrick Associates of San Francisco ("DFA"), which is headed by defendant Don Fitzpatrick. CompuServe has no employment, contractual, or other direct relationship with either DFA or Fitzpatrick; DFA provides Rumorville to the Journalism Forum under a contract with CCI. The contract between CCI and DFA provides that DFA "accepts total responsibility for the contents" of Rumorville. Cameron Aff., Exhibit B. The contract also requires CCI to limit access to Rumorville to those CIS subscribers who have previously made membership arrangements directly with DFA.

CompuServe has no opportunity to review Rumorville's contents before DFA uploads it into CompuServe's computer banks, from which it is immediately available to approved CIS subscribers. CompuServe receives no part of any fees that DFA charges for access to Rumorville, nor does CompuServe compensate DFA for providing Rumorville to the Journalism Forum; the compensation CompuServe receives for making Rumorville available to its subscribers is the standard online time usage and membership fees charged to all CIS subscribers, regardless of the information services they use. CompuServe maintains that, before this action was filed, it had no notice of any complaints about the contents of the Rumorville publication or about DFA.

In 1990, plaintiffs Cubby, Inc. ("Cubby") and Robert Blanchard ("Blanchard") (collectively, "plaintiffs") developed Skuttlebut, a computer database designed to publish and distribute electronically news and gossip in the television news and radio industries. Plaintiffs intended to compete with Rumorville; subscribers gained access to Skuttlebut through their personal computers after completing subscription agreements with plaintiffs.

Plaintiffs claim that, on separate occasions in April 1990, Rumorville published false and defamatory statements relating to Skuttlebut and Blanchard, and that CompuServe carried these statements as part of the Journalism Forum. The allegedly defamatory remarks included a suggestion that individuals at Skuttlebut gained access to information first published by Rumorville "through some back door"; a statement that Blanchard was "bounced" from his previous employer, WABC; and a description of Skuttlebut as a "new start-up scam." Affidavit of Robert G. Blanchard, sworn to on July 11, 1991 ("Blanchard Aff."), ¶¶ 5–9.

Plaintiffs have asserted claims against CompuServe and Fitzpatrick under New York law for libel of Blanchard, business disparagement of Skuttlebut, and unfair competition as to Skuttlebut, based largely upon the allegedly defamatory statements contained in Rumorville. CompuServe has moved, pursuant to Fed.R.Civ.P. 56, for summary judgment on all claims against it. CompuServe does not dispute, solely for the purposes of this motion, that the statements relating to Skuttlebut and Blanchard were defamatory; rather, it argues that it acted as a distributor, and not a publisher, of the statements, and cannot be held liable for the statements because it did not know and had no reason to know of the statements. Plaintiffs oppose CompuServe's motion for summary judgment, claiming that genuine issues of material fact exist and that little in the way of discovery has been undertaken thus far.

## Discussion

### I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property,* 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co.,* 844 F.2d 988, 992 (2d Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)).

The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Herbert Construction Co. v. Continental Insurance Co.,* 931 F.2d 989, 993 (2d Cir. 1991). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.,* 867 F.2d 102, 107 (2d Cir.), *cert. denied,* 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553; *see Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991).

Once a motion for summary judgment is properly made, however, the burden then shifts to the non-moving party, which " 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (emphasis in original). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.' " *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512 and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)); *see also Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.' " *Western World Insurance Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting *Borthwick v. First Georgetown Securities, Inc.*, 892 F.2d 178, 181 (2d Cir.1989) and *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

## II. *Libel Claim*

### A. *The Applicable Standard of Liability*

Plaintiffs base their libel claim on the allegedly defamatory statements contained in the Rumorville publication that CompuServe carried as part of the Journalism Forum. CompuServe argues that, based on the undisputed facts, it was a distributor of Rumorville, as opposed to a publisher of the Rumorville statements. CompuServe further contends that, as a distribu-

tor of Rumorville, it cannot be held liable on the libel claim because it neither knew nor had reason to know of the allegedly defamatory statements. Plaintiffs, on the other hand, argue that the Court should conclude that CompuServe is a publisher of the statements and hold it to a higher standard of liability.

Ordinarily, " 'one who repeats or otherwise republishes defamatory matter is subject to liability as if he had originally published it.' " *Cianci v. New Times Publishing Co.*, 639 F.2d 54, 61 (2d Cir.1980) (Friendly, J.) (quoting Restatement (Second) of Torts § 578 (1977)). With respect to entities such as news vendors, book stores, and libraries, however, "New York courts have long held that vendors and distributors of defamatory publications are not liable if they neither know nor have reason to know of the defamation." *Lerman v. Chuckleberry Publishing, Inc.*, 521 F.Supp. 228, 235 (S.D.N.Y.1981); *accord Macaluso v. Mondadori Publishing Co.*, 527 F.Supp. 1017, 1019 (E.D.N.Y.1981).

The requirement that a distributor must have knowledge of the contents of a publication before liability can be imposed for distributing that publication is deeply rooted in the First Amendment, made applicable to the states through the Fourteenth Amendment. "[T]he constitutional guarantees of the freedom of speech and of the press stand in the way of imposing" strict liability on distributors for the contents of the reading materials they carry. *Smith v. California*, 361 U.S. 147, 152–53, 80 S.Ct. 215, 218–19, 4 L.Ed.2d 205 (1959). In *Smith*, the Court struck down an ordinance that imposed liability on a bookseller for possession of an obscene book, regardless of whether the bookseller had knowledge of the book's contents. The Court reasoned that

"Every bookseller would be placed under an obligation to make himself aware of the contents of every book in his shop. It would be altogether unreasonable to demand so near an approach to omniscience." And the bookseller's burden would become the public's burden, for by restricting him the public's access to

reading matter would be restricted. If the contents of bookshops and periodical stands were restricted to material of which their proprietors had made an inspection, they might be depleted indeed. *Id.* at 153, 80 S.Ct. at 219 (citation and footnote omitted). Although *Smith* involved criminal liability, the First Amendment's guarantees are no less relevant to the instant action: "What a State may not constitutionally bring about by means of a criminal statute is likewise beyond the reach of its civil law of libel. The fear of damage awards ... may be markedly more inhibiting than the fear of prosecution under a criminal statute." *New York Times Co. v. Sullivan,* 376 U.S. 254, 277, 84 S.Ct. 710, 724, 11 L.Ed.2d 686 (1964) (citation omitted).

CompuServe's CIS product is in essence an electronic, for-profit library that carries a vast number of publications and collects usage and membership fees from its subscribers in return for access to the publications. CompuServe and companies like it are at the forefront of the information industry revolution. High technology has markedly increased the speed with which information is gathered and processed; it is now possible for an individual with a personal computer, modem, and telephone line to have instantaneous access to thousands of news publications from across the United States and around the world. While CompuServe may decline to carry a given publication altogether, in reality, once it does decide to carry a publication, it will have little or no editorial control over that publication's contents. This is especially so when CompuServe carries the publication as part of a forum that is managed by a company unrelated to CompuServe.

With respect to the Rumorville publication, the undisputed facts are that DFA uploads the text of Rumorville into CompuServe's data banks and makes it available to approved CIS subscribers instantaneously.[1] CompuServe has no more editorial control over such a publication than does a public library, book store, or newsstand, and it would be no more feasible for CompuServe to examine every publication it carries for potentially defamatory statements than it would be for any other distributor to do so. "First Amendment guarantees have long been recognized as protecting distributors of publications.... Obviously, the national distributor of hundreds of periodicals has no duty to monitor each issue of every periodical it distributes. Such a rule would be an impermissible burden on the First Amendment." *Lerman v. Flynt Distributing Co.,* 745 F.2d 123, 139 (2d Cir.1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985); *see also Daniel v. Dow Jones & Co.,* 137 Misc.2d 94, 102, 520 N.Y.S.2d 334, 340 (N.Y.Civ.Ct.1987) (computerized database service "is one of the modern, technologically interesting, alternative ways the public may obtain up-to-the-minute news" and "is entitled to the same protection as more established means of news distribution").

Technology is rapidly transforming the information industry. A computerized database is the functional equivalent of a more traditional news vendor, and the inconsistent application of a lower standard of liability to an electronic news distributor such as CompuServe than that which is applied to a public library, book store, or newsstand would impose an undue burden on the free flow of information. Given the relevant First Amendment considerations, the appropriate standard of liability to be

---

**1.** Civil Rule 3(g) of the Local Rules of this District requires that a party moving for summary judgment provide a statement of the material facts as to which it contends there is no genuine issue to be tried. Rule 3(g) further requires that the non-movant file a statement of the material facts as to which it contends there is a genuine issue to be tried, and provides that facts set forth in the movant's 3(g) statement that are uncontroverted by the non-movant's statement are deemed to be admitted. CompuServe's 3(g) statement contends that there is no genuine issue to be tried as to the fact that "CompuServe has no opportunity to review Rumorville's contents before DFA 'uploads' it into CompuServe's computer banks, from which it is instantaneously available to approved CIS subscribers." Plaintiffs do not, in their 3(g) statement or elsewhere, controvert this material fact; therefore, it is deemed admitted pursuant to Rule 3(g). *See General Electric Co. v. New York State Department of Labor,* 936 F.2d 1448, 1452 (2d Cir.1991); *Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir.1984).

applied to CompuServe is whether it knew or had reason to know of the allegedly defamatory Rumorville statements.

### B. *CompuServe's Liability as a Distributor*

CompuServe contends that it is undisputed that it had neither knowledge nor reason to know of the allegedly defamatory Rumorville statements, especially given the large number of publications it carries and the speed with which DFA uploads Rumorville into its computer banks and makes the publication available to CIS subscribers. Affidavit of Eben L. Kent, sworn to on April 4, 1991 ("Kent Aff."), ¶¶ 7–9; Cameron Aff., ¶¶ 6–7. The burden is thus shifted to plaintiffs, who " 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed. R.Civ.P. 56(e)). Plaintiffs have not set forth anything other than conclusory allegations as to whether CompuServe knew or had reason to know of the Rumorville statements, and have failed to meet their burden on this issue. Plaintiffs do contend that CompuServe was informed that persons affiliated with Skuttlebut might be "hacking" in order to obtain unauthorized access to Rumorville, but that claim is wholly irrelevant to the issue of whether CompuServe was put on notice that the Rumorville publication contained statements accusing the Skuttlebut principals of engaging in "hacking."

Plaintiffs have not set forth any specific facts showing that there is a genuine issue as to whether CompuServe knew or had reason to know of Rumorville's contents. Because CompuServe, as a news distributor, may not be held liable if it neither knew nor had reason to know of the allegedly defamatory Rumorville statements, summary judgment in favor of CompuServe on the libel claim is granted.

### III. *Business Disparagement Claim*

Plaintiffs base the claim for business disparagement of Skuttlebut on statements published in Rumorville in April 1990. Plaintiffs' contention is that "defendants made statements intentionally designed to discourage its [sic] own subscribers and others in the news business from associating with Skuttlebut, thus disparaging Skuttlebut's business." Complaint, ¶ 20. These statements include, *inter alia*, the allegedly defamatory remarks suggesting that plaintiffs inappropriately accessed information from Rumorville "through some back door" and describing Skuttlebut as a "new start-up scam." Blanchard Aff., ¶¶ 5, 8.

New York courts rarely use the term "business disparagement" and have not articulated the elements of such a claim. New York's highest court, although not using the "business disparagement" label, has recognized a cause of action for tortious conduct similar to that alleged by plaintiffs. *See Ruder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 670–71, 422 N.E.2d 518, 522, 439 N.Y.S.2d 858, 862 (1981) ("[w]here a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies").[2] New York courts have applied other labels to similar conduct: "The tort of trade libel or injurious falsehood consists of the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment." *Waste Distillation Technology, Inc. v. Blasland & Bouck Engineers, P.C.*, 136 A.D.2d 633, 633, 523 N.Y.S.2d 875, 876 (2d Dep't 1988).

Regardless of the label used, the substance of plaintiffs' "business disparagement" claim is similar to the action for defamation recognized in *Ruder & Finn*, as well as the action for trade libel or

---

**2.** The New York Court of Appeals distinguished this type of defamation in the commercial context from "product disparagement," which involves a false statement that "is confined to denigrating the quality of the business' goods or services" and requires that malice and special damages be proven. *Ruder & Finn*, 52 N.Y.2d at 670–71, 422 N.E.2d at 521–22, 439 N.Y.S.2d at 861–62.

injurious falsehood recognized in *Waste Distillation Technology.* Under either formulation, plaintiffs would have to prove that CompuServe had knowledge or reason to know of Rumorville's publication of the allegedly disparaging statements in order to hold CompuServe liable for business disparagement. As discussed with respect to the libel claim, *supra,* plaintiffs have failed to meet their burden of setting forth specific facts showing that there is a genuine issue as to whether CompuServe had knowledge or reason to know of the April 1990 Rumorville statements. Summary judgment in favor of CompuServe on the business disparagement claim is therefore granted.[3]

## IV. *Unfair Competition Claim*

Plaintiffs base the unfair competition claim on the statements concerning Skuttlebut that appeared in Rumorville in April 1990. Plaintiffs' theory is that Rumorville launched a "campaign of disparagement of Skuttlebut" in order to compete with Skuttlebut and retain its subscribers without reducing its fee structure. Complaint, ¶¶ 25–26. "In order to state a claim for unfair competition based on disparagement, [the plaintiff] must allege some injurious falsehood intentionally uttered that caused the plaintiff to suffer actual damage." *Brignoli v. Balch Hardy & Scheinman, Inc.,* 645 F.Supp. 1201, 1208 (S.D.N.Y.1986) (citing *Diehl & Sons, Inc. v. International Harvester Co.,* 445 F.Supp. 282, 291–92 (E.D.N.Y.1978) (citing *Penn–Ohio Steel Corp. v. Allis–Chalmers Manufacturing Co.,* 7 A.D.2d 441, 184 N.Y.S.2d 58 (1st Dep't 1959))). "Generally a statement is actionable only where it is made intentionally to a third person and results in direct financial loss to the party whose interest is disparaged." *Id.* (citing *Payrolls & Tabulating, Inc. v. Sperry Rand*

*Corp.,* 22 A.D.2d 595, 597, 257 N.Y.S.2d 884, 886 (1st Dep't 1965) (citing Restatement of Torts §§ 630 *et seq.*)).

Because the utterance of a disparaging statement must be intentional in order to give rise to an unfair competition claim based on disparagement, CompuServe may not be held liable on plaintiffs' unfair competition claim if it did not know or have reason to know of the Rumorville statements. As discussed with respect to the libel claim, *supra,* plaintiffs have failed to meet their burden of setting forth specific facts showing that there is a genuine issue as to whether CompuServe had knowledge or reason to know of the April 1990 Rumorville statements. Summary judgment in favor of CompuServe on the unfair competition claim is therefore granted.

## V. *Vicarious Liability*

Plaintiffs also argue that CompuServe may be held vicariously liable for the allegedly defamatory Rumorville statements, based on an agency relationship between CompuServe, CCI, and DFA. CompuServe contends that the undisputed facts demonstrate that, at most, DFA is an independent contractor of CCI and CCI is an independent contractor of CompuServe, so that it may not be held vicariously liable for the statements that appeared in Rumorville.

"An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control." *In re Shulman Transport Enterprises, Inc.,* 744 F.2d 293, 295 (2d Cir.1984). In contrast, an independent contractor is " 'one who, in exercising an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of his employer, except as to the product or result of his

---

**3.** Plaintiffs also contend, as part of the business disparagement claim, that (unspecified) "defendants ... took affirmative action to initiate telephone calls to other data base systems and inform these systems that plaintiffs were 'computer hackers' and ran a scam operation." Complaint, ¶ 19. These alleged telephone calls do not, however, have any bearing on CompuServe's liability for statements contained in the

Rumorville publication. Moreover, plaintiffs have not contested CompuServe's denial of any involvement on the part of its agents or employees in the alleged phone calls. *See* Kent Aff., sworn to on April 4, 1991, ¶ 9. Therefore, even if some person or persons did make the alleged phone calls, that fact does not prevent CompuServe from prevailing on its summary judgment motion.

work.'" *Murray Hill Films, Inc. v. Martinair Holland, N.V.,* 1987 WL 14918, * 3, 1987 U.S. Dist. LEXIS 6500, * 7–* 8 (S.D.N.Y. July 17, 1987) (quoting *Dorkin v. American Express Co.,* 74 Misc.2d 673, 675, 345 N.Y.S.2d 891, 894 (Sup.Ct.1973), *aff'd,* 43 A.D.2d 877, 351 N.Y.S.2d 190 (3d Dep't 1974)); *accord Spiro v. Pence,* 566 N.Y.S.2d 1010, 1012 (City Ct. Albany County 1991). In order for an employer to be held vicariously liable for the tort of an independent contractor, the employer must have directed the act from which the injury resulted or have taken an affirmative, active part in its commission. *See Ramos v. State,* 34 A.D.2d 1056, 1056, 312 N.Y.S.2d 185, 186 (3d Dep't 1970).

 Based on the undisputed facts, the Court concludes that neither CCI nor DFA should be considered an agent of Compu-Serve. CompuServe, CCI, and DFA are independent of one another. CompuServe has simply contracted with CCI for CCI to manage the Journalism Forum; under the contract, CCI "agrees to manage, review, create, delete, edit and otherwise control the contents of the [Journalism Forum], in accordance with editorial and technical standards and conventions of style as established by CompuServe." Cameron Aff., Exhibit A. CompuServe has thereby delegated control over the assembly of the contents of the Journalism Forum to CCI. CompuServe's ultimate right under the contract to remove text from its system for noncompliance with its standards merely constitutes control over the result of CCI's independent work. This level of control over the Journalism Forum is insufficient to rise to the level of an agency relationship. Similarly, the contractual provisions calling for CompuServe to provide CCI with training necessary to manage the Journalism Forum and to indemnify CCI from claims resulting from information appearing in the Journalism Forum do not give CompuServe sufficient control over CCI and its management of the Journalism Forum to render CCI an agent of Compu-Serve.

As for DFA, the original publisher of Rumorville, CompuServe has no direct contractual relationship with DFA; DFA provides Rumorville to the Journalism Forum under a contract with CCI. The contract between CCI and DFA provides that "DFA accepts total responsibility for the contents of" Rumorville; that DFA "agrees to maintain the [Rumorville] files in a timely fashion including uploading and merging into availability to the members of [Rumorville]"; and that "DFA maintains total responsibility for communicating with its members, billing them for any membership fees and collecting same." Cameron Aff., Exhibit B. DFA is therefore largely independent of CompuServe in its publication of Rumorville, and the tenuous relationship between DFA and CompuServe is, at most, that of an independent contractor of an independent contractor. The parties cannot be seen as standing in any sort of agency relationship with one another, and CompuServe may not be held liable for any of plaintiffs' claims on a theory of vicarious liability. *Cf. McNally v. Yarnall,* 764 F.Supp. 838, 852–53 (S.D.N.Y.1991).

## VI. *Need for Additional Discovery*

 Plaintiffs also suggest, in their memorandum of law in opposition to CompuServe's summary judgment motion, that additional discovery is needed and should preclude the grant of summary judgment. Fed.R.Civ.P. 56(f) provides that when the party opposing a motion for summary judgment cannot "present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit ... discovery to be had." In order to persuade the Court to grant a request for additional discovery, plaintiffs would have to "file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Department of the Navy,* 891 F.2d 414, 422 (2d Cir.1989) (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir.1985)). The Court

may reject a request for further discovery pursuant to Rule 56(f) if no affidavit is filed or if the request is based on pure speculation as to what would be discovered. *Burlington Coat Factory,* 769 F.2d at 926–927.

In the instant action, plaintiffs have failed to fulfill the requirements enumerated by the Second Circuit in *Hudson River Sloop Clearwater* and *Burlington Coat Factory.* Plaintiffs have simply asserted, not in an affidavit but in their memorandum of law, that "[l]ittle in the way of discovery has been undertaken" and that "CompuServe has produced documents in response to the plaintiff's First Document Request, but no depositions of the parties have taken place." Memorandum of Law in Opposition to Defendant CompuServe's Motion for Summary Judgment at 2. Plaintiffs have not specified what facts they wish to discover through depositions or other means and how these are to be obtained, how these are reasonably expected to create a genuine issue of material fact, what efforts they have made to obtain these facts, or why they have been unsuccessful in their efforts. Plaintiffs have therefore not made a showing sufficient to persuade the Court to deny CompuServe's motion for summary judgment or to order a continuance to allow further discovery to take place.

### Conclusion

For the reasons stated above, CompuServe's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is granted on all claims asserted against it.

SO ORDERED