GUCCI AMERICA, INC., Plaintiff,

v.

DUTY FREE APPAREL, LTD., d/b/a Duty Free Apparel, Inc., Joel Soren, Harvest Wrap, Inc., Kurt Davidson and John Does 2–20, Defendants.

No. 02 CIV. 1298(VM).

United States District Court, S.D. New York.

Aug. 6, 2003.

**270**

Milton Springut, Tal S. Benschar, Kalow & Springut, L.L.P., New York City, for Gucci America, Inc., plaintiff.

Steven M. Lester, Law Offices of Steven M. Lester, East Meadow, NY, for Duty Free Apparel, Ltd. dba Duty Free Apparel, Inc., Joel Soren, defendants.

Darren Oved, Oved & Oved, New York City, for Harvest Wrap, Inc. and Kurt Davidson, defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Gucci America, Inc. ("Gucci") commenced this action on against defendants Duty Free Apparel, Ltd. ("DFA"), Joel Soren ("Soren")[1] and John Does 2–20 (collectively "Defendants")[2] alleging trade-

---

1. Soren is the Chief Executive Officer of DFA.

2. Subsequently, in its Amended Complaint dated July 30, 2002 (the "Amended Complaint"), Gucci identified two defendants originally named as John Does in its original Complaint dated February 19, 2002 (the "Complaint"). Specifically, Gucci named Harvest Wrap, Inc. ("Harvest Wrap"), DFA's supplier, and its principal, Kurt Davidson ("Davidson"). These additional defendants

are not parties to the motion under consideration, and are not included in the term "Defendants" as used in this Decision and Order. John Does 2–5 are other individuals doing business at or for DFA and/or Harvest Wrap. John Doe's 6–10 are other entities or individuals who are suppliers to DFA and/or Harvest Wrap. Gucci also added John Does 11–20 in its Amended Complaint. These defendants are entities or other individuals who pur-

mark infringement pursuant to the Lanham Act, 15 U.S.C. §§ 1051, *et seq.* (2003), and asserting various related claims under New York law. Defendants raise two counterclaims under New York law, namely, violation of N.Y. Gen. Bus. Law § 349 (McKinney's 2003) ("NY GBL § 349") and a common law claim of unfair competition. Gucci now moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Defendants' counterclaims for failure to state a claim upon which relief can be granted. For the reasons discussed below, Gucci's motion with respect to both counterclaims is GRANTED.

## I. *BACKGROUND*

Gucci's Amended Complaint,[3] asserts various claims, including: violation of the Lanham Act, particularly invoking 15 U.S.C. § 1114(1) to allege infringement of its trademarks registered with the U.S. Patent and Trademark Office and also § 1125(a) to allege use in commerce of false designations of origin and false descriptions and representations; violation of N.Y. GBL § 349 alleging deceptive acts committed in the conduct of business, trade or commerce that work a fraud and deception on the public; and State law claims of trademark infringement and unfair competition.

Gucci asserts that it is the owner of the trademark and trade name "GUCCI" and various "G" and "GG" logos and designs. These trademarks are associated with various articles of jewelry, watches, handbags, wallets, fashion accessories, wearing apparel and related services. Gucci claims that in connection with its trademarks, it maintains quality and service standards for products and services sold both in its stores and through its licensees and related entities; that these standards promote the highest quality goods and services to the public; that through its trademarks it protects this reputation; and that the resulting public goodwill is of incalculable value.

Gucci alleges that Defendants, after Gucci's federal registration of its trademarks, distributed and sold handbags, wallets and belts bearing copies of Gucci trademarks. Gucci also asserts that Defendants willfully and intentionally infringed Gucci's trademarks and continued such activity with knowledge that the use of these or confusingly similar trademarks was a direct infringement of Gucci's rights. Consequently, Gucci argues that such use by Defendants, without Gucci's consent, is likely to cause confusion in the minds of the public, creating a false impression as to the source, origin or quality of the goods being sold.

Defendants filed an Answer And Counterclaims dated March 11, 2002 (the "Answer")[4] in which they deny Gucci's claims, raise various affirmative defenses and assert two counterclaims under New York law. They allege they have never repre-

chased allegedly counterfeit goods from DFA and/or Harvest Wrap and resold or redistributed such goods to wholesalers or retailers.

**3.** The Court notes that Gucci's Amended Complaint did not change the claims raised in the original Complaint but rather identified two defendants listed as John Does in the Complaint and expanded upon the factual allegations and background material initially presented.

**4.** The Court notes that Defendants did not file an amended answer to the Amended Complaint. Harvest Wrap and Davidson filed an Answer dated September 5, 2002 to the Amended Complaint on September 5, 2002. Harvest Wrap and Davidson deny Gucci's allegations and assert several affirmative defenses. However, as discussed in note 2 *supra,* these parties are not involved in the motion to dismiss now under consideration.

sented themselves as being connected with or approved by Gucci. Defendants claim that DFA is a retailer of authentic designer merchandise, including Gucci items. Additionally, Defendants contend that Gucci employees told DFA customers that the goods these customers bought from DFA were not authentic. Gucci's employees allegedly based these statements exclusively on the ground that those DFA customers did not have receipts from an authorized Gucci retailer, rather than on a genuine appraisal of the authenticity of each given product. Defendants also assert that their investigators attempted to return items purchased from a Gucci store within a few days and without a receipt and were told by Gucci's employees that the goods were "counterfeit and not authentic." (Answer, ¶ 25.) Based on these facts, Defendants first allege a violation of N.Y. GBL § 349(a) for deceptive acts committed in the conduct of business, trade or commerce that work a fraud and deception on the public, and further allege a second claim of unfair competition under New York law. The Court now turns to Gucci's motion to dismiss Defendants' counterclaims.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

Dismissal of a complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is appropriate only where "it appears beyond doubt that the [non-moving party] can prove no set of facts in support of his claim that would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999). The standards for dismissing counterclaims under Rule 12(b)(6) are identical to the standards for dismissing claims raised by a plaintiff. *See MTV Networks, a Div. of Viacom Int'l, Inc. v. Curry*, 867 F.Supp. 202, 203 (S.D.N.Y.1994); *Reeves v. American*

*Broad. Cos.*, 580 F.Supp. 84, 89–90 (S.D.N.Y.1983), *aff'd*, 719 F.2d 602 (2d Cir. 1983). On a Rule 12(b)(6) motion to dismiss for failure to state a claim, a Court accepts all well-pleaded factual assertions as true and draws all reasonable inferences in favor of the non-moving party. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *McGinty v. State of New York*, 193 F.3d 64, 68 (2d Cir.1999).

### B. *DEFENDANTS' COUNTERCLAIM PURSUANT TO N.Y. GBL § 349*

Defendants' first counterclaim alleges a violation of N.Y. GBL § 349(a). That provision prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ." To carry out the purposes of § 349(a), N.Y. GBL § 349(h) recognizes a cause of action for "any person who has been injured by any violation of this section . . . to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater or both such actions." Gucci's motion to dismiss Defendants' § 349 counterclaim argues that Defendants do not allege Gucci engaged in fraudulent activity that is consumer oriented or has a direct impact on consumers at large. Gucci further maintains that the gravamen of the Defendants' first counterclaim is not consumer injury or harm to the public interest but, rather, harm to DFA's business. Defendants respond that "Gucci's false statements to consumers that their authentic Gucci handbags were counterfeit were misleading and dishonest in a material way. Moreover, [DFA] was injured by Gucci's consumer-oriented fraudulent conduct." (Memorandum of Law of Defendants Duty Free Apparel, Ltd. and Joel Soren In Opposition to Plaintiff's Motion to Dismiss Defendants' Counterclaims dated April 26,

2002 ("Def.Mem.") at 5.) The Court finds insufficient grounds for Defendants' § 349 counterclaim.

▮▮▮ To establish a *prima facie* case for a claim of deceptive trade practices under N.Y. GBL § 349, a claimant must allege that: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir.2000) (per curiam); *see Capitol Records, Inc. v. Wings Digital Corp.,* 218 F.Supp.2d 280, 285–86 (S.D.N.Y.2002); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744 (1995). " '[C]orporate competitors now have standing to bring a claim under this [statute] . . . so long as some harm to the public at large is at issue . . . .' " *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir.1995) (quoting *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 786 F.Supp. 182, 215 (E.D.N.Y.), *vacated in part on other grounds,* 973 F.2d 1033, 1036 (2d Cir.1992)), *cert. denied,* 516 U.S. 1114, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996). However, when a competitor raises a § 349 claim, "[i]t is clear that 'the gravamen of the complaint must be consumer injury or harm to the public interest.' " *Id.* (quoting *Azby Brokerage, Inc. v. Allstate Ins. Co.,* 681 F.Supp. 1084, 1089 n. 6 (S.D.N.Y. 1988)).

Therefore, as the Second Circuit held in *Securitron,* the dispositive question to assess whether or not a competitor can properly state a claim under § 349 is whether "the matter affects the public interest in New York . . . ." 65 F.3d at 264; *see Capi-*

*tol Records,* 218 F.Supp.2d at 286. This Court has similarly explained that "[i]njury or harm that satisfy this standard include 'potential danger to the public health or safety.' " *La Cibeles, Inc. v. Adipar, Ltd.,* No. 99 Civ. 4129, 2000 WL 1253240, at *15 (S.D.N.Y. Sept. 1, 2000) (quoting *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.,* No. 96 Civ. 5150, 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997)).[5]

Moreover, Courts in this District routinely reject claims brought under § 349 where a commercial claimant does not adequately allege harm to the public interest. *See, e.g., La Cibeles,* 2000 WL 1253240, at *15. Commercial claimants under § 349 must allege conduct that has "significant ramifications for the public at large" in order to properly state a claim. *See Shred–It USA, Inc. v. Mobile Data Shred, Inc.,* 228 F.Supp.2d 455, 465 (S.D.N.Y. 2002) (citations omitted; quotations omitted); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* No. 91 Civ. 4544, 1992 WL 170559, at *4 (S.D.N.Y. July 2, 1992). Claims that arise out of a trademark infringement action, and disputes between competitors where the core of the claim is harm to another business as opposed to consumers, both constitute situations which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements of § 349. *See, e.g., Sports Traveler,* 1997 WL 137443, at *3 (noting that "[t]he courts of this Circuit have held that trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers that is required to state a claim under Section 349."); *Winner Int'l v. Kryptonite Corp.,* No. 95 Civ. 247,

---

**5.** The Court in *Sports Traveler* also noted that "[b]ecause section 349 is modeled after the Federal Trade Commission Act, federal courts have interpreted the statute's scope as limited to the types of offenses to the public interest that would trigger Federal Trade Commission intervention under 15 U.S.C. § 45 . . . ." 1997 WL 137443, at *2.

1996 WL 84476, at *3 (S.D.N.Y. Feb. 27, 1996) (noting that "Courts routinely reject such attempts to fashion Section 349 ... claims from garden variety disputes between competitors" where the gravamen of the complaint is harm to another business); *Fashion Boutique of Short Hills,* 1992 WL 170559, at *4 (dismissing a claim under § 349 where the "alleged harm to [the claimant's] business far outweighs any incidental harm to the public at large.").

█ Here, Defendants allege that DFA is "a retailer of authentic designer handbags and accessories, including, *inter alia,* Gucci handbags ... and has developed a favorable reputation in the industry for selling authentic designer products at reasonable prices." (Answer, ¶¶ 21–22.) Defendants allege that as a matter of business practice Gucci employees fail to exchange items without a receipt and question their authenticity, including items purchased from DFA. (*See id.,* ¶ 23.) Defendants' also claim that their investigators attempted unsuccessfully to return products purchased at Gucci without a receipt and were told that the items were "counterfeit and not authentic." (*Id.,* ¶ 25.) Defendants argue that as a result, these actions by Gucci harm and work a fraud on consumers by making them purchase "the same exact product" for more money from Gucci. (Def. Mem. at 5.) Moreover, the Defendants seek to enjoin Gucci's "deceptive and misleading practices" and claim damages to DFA of "not less than $50,000." (Answer, ¶¶ 27–28.)

Based on the facts alleged in the Answer, the Court finds that the gravamen of Defendants' § 349 counterclaim is harm to DFA's business in the form of: (1) lost profits from items that are returned to DFA by customers who allegedly had been told by Gucci employees that their goods are not authentic; and (2) a general loss of good will from consumers who may hear through word-of-mouth that DFA's goods are not authentic. Where the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have a cognizable cause of action under § 349. *See, e.g., Fashion Boutique of Short Hills,* 1992 WL 170559, at *3–4; *Shred–It,* 228 F.Supp.2d at 465; *Sports Traveler,* 1997 WL 137443, at *3; *Winner,* 1996 WL 84476, at *2–3.

Defendants' allegations are clearly distinguishable from cases in which a cause of action under § 349 was sustained. *See, e.g., Securitron,* 65 F.3d at 264–65 (finding that the public was substantially affected because the defendants gave false information regarding plaintiff's products to regulatory agencies "primarily concerned with the safety of the public," caused the regulatory agency "to undertake unnecessary investigations," and disseminated false information allegedly affecting a hospital contract for the installation of the plaintiff's product); *In re Houbigant Inc.,* 914 F.Supp. 964, 983–84 (S.D.N.Y.1995) (finding that where defendants "were part of an unlawful scheme to export and sell counterfeit [items] ... with intent to cause confusion and mistake, to deceive customers as to the source and origin of the products ... [the defendants' actions] would involve a public harm if proved.") (citations omitted; internal quotations omitted); *Weight Watchers Int'l, Inc. v. Stouffer Corp.,* 744 F.Supp. 1259, 1285 (S.D.N.Y.1990) (finding that "the false advertising involving diet and food that [the defendant] allegedly conducted clearly would involve a [sufficient] public harm if proved."); *Construction Tech., Inc. v. Lockformer Co., Inc.,* 704 F.Supp. 1212, 1222–23 (S.D.N.Y.1989) (sustaining a claim under § 349 for "false comparative advertising, a matter certainly affecting the public at large.").

Here, the Defendants' allegation that consumers will be forced to return their items to DFA and pay much higher prices to purchase the same items from Gucci, does not set forth sufficient consumer harm to state a claim under § 349. *See Maurizio,* 230 F.3d at 521–22 (dismissing a claim under § 349 for lack of a "direct impact on the body of consumers."); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.,* 155 F.Supp.2d 1, 25–26, 26 n. 42 (S.D.N.Y.2001), *aff'd in part and remanded on other grounds,* 277 F.3d 253, 255 (2d Cir.2002); *La Cibeles,* 2000 WL 1253240, at *15 (noting that alleging only general consumer confusion does not sufficiently state the direct harm to consumers that is required to state a claim under § 349); *Fashion Boutique of Short Hills,* 1992 WL 170559, at *3–4 (dismissing a § 349 claim for failure to allege sufficient consumer harm). For these reasons, Defendants' first counterclaim under § 349 must be dismissed for failure to allege sufficient consumer harm.[6]

### C. *DEFENDANTS' UNFAIR COMPETITION CLAIM*

The Defendants also assert a claim of unfair competition under New York law, alleging essentially the same facts as those set forth pursuant to their claim under N.Y. GBL § 349. Gucci counters that this cause of action is not properly presented as a claim of unfair competition but, rather, product disparagement (also known as trade libel). Consequently, Gucci argues that the Defendants must plead special damages and malice, both required elements of product disparagement but not of unfair competition, in order to state a claim for which relief can be granted. The Court agrees.

Unfair competition was defined and distinguished from product disparagement by the New York Court of Appeals in *Ruder & Finn, Inc. v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 439 N.Y.S.2d 858, 422 N.E.2d 518, 521–22 (1981). *See also Cubby, Inc. v. CompuServe, Inc.,* 776 F.Supp. 135, 141–42 (S.D.N.Y.1991). Under New York law as enunciated in *Ruder & Finn,* unfair competition "does not have boundless application as a remedy for unfair trade practices .... Rather, ... the primary concern in unfair competition is the protection of a business from another's misappropriation of the business' organization or its expenditure of labor, skill, and money." 439 N.Y.S.2d 858, 422 N.E.2d at 522 (citations omitted; internal quotations omitted); *see Cue Pub. Co. v. Kirshenberg,* 22 Misc.2d 188, 198 N.Y.S.2d 993, 996 (1960) (noting that while there are many definitions of unfair competition, "[t]his is nothing but a convenient name for the doctrine that no one should be allowed to sell his goods as those of another.") (citations omitted; internal quotations omitted). While the tort of unfair competition encompasses more than merely trying to pass off one's goods as those of another, it is still limited to "misappropriation of the skill, expenditures, and labor of another." *Weight Watchers,* 744 F.Supp. at 1283; *accord Diversified Mktg., Inc. v. Estee Lauder, Inc.,* 705 F.Supp. 128, 131 (S.D.N.Y. 1988); *Ideal Toy Corp. v. Kenner Prods. Div. of General Mills Fun Group, Inc.,* 443 F.Supp. 291, 305–09 (S.D.N.Y.1977).

On the other hand, product disparagement is the proper cause of action "[w]here ... the statement is confined to denigrating the quality of the business'

---

**6.** Gucci also argues that Defendants' first cause of action is improperly cast as a § 349 claim and is properly construed as one of product disparagement. Because the Court is persuaded that Defendants fail to allege sufficient public harm to state a claim for relief under § 349, the Court need not address this alternative argument.

goods or services ....." *Ruder & Finn,* 439 N.Y.S.2d 858, 422 N.E.2d at 522; *accord Cubby,* 776 F.Supp. at 141. The Restatement (Second) of Torts § 623A (1977) defines common law product disparagement as follows:

> One who publishes a false statement harmful to the interest of another is subject to liability for pecuniary loss resulting to the other if: (a) he intends for publication of the statement to result in harm to the interest of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

In order to prevail on a claim of product disparagement, the claimant must establish: "(1) the falsity of [the] statements; (2) publication to a third person; (3) malice; and (4) special damages." *Kirby v. Wildenstein,* 784 F.Supp. 1112, 1115 (S.D.N.Y.1992); *see Angio–Medical Corp. v. Eli Lilly & Co.,* 720 F.Supp. 269, 274 (S.D.N.Y.1989); *Drug Research Corp. v. Curtis Publ'g Co.,* 7 N.Y.2d 435, 199 N.Y.S.2d 33, 166 N.E.2d 319, 321–22 (1960).

■ Under an application of these definitions, Defendants' counterclaim is more properly construed as one for product disparagement rather than unfair competition. Defendants contend that because "Gucci informs [DFA's] customers and other consumers that their authentic Gucci products are counterfeit based solely on the fact that the customers do not have a sales receipt from an authorized Gucci dealer, and not based upon whether the product itself is counterfeit," Gucci's conduct therefore constitutes unfair competition under New York law. (Def. Mem. at 3.) Further, Defendants argue that because "[DFA] invested capital, incurred expenses and expended labor to acquire au-thentic Gucci handbags to sell at discount prices ... Gucci misappropriates [DFA's] investment of capital and labor by stating to the public that only merchandise purchased directly from an authorized Gucci dealer is authentic, regardless of the merchandise's actual authenticity." (*Id.,* at 3–4.)

Defendants' conclusion that Gucci misappropriated DFA's investment of capital and labor does not follow, however. As noted above, "[u]nder New York common law, the essence of unfair competition is 'the bad faith misappropriation of the labors and expenditures of others, likely to cause confusion or to deceive the purchasers as to the origins of the goods.'" *Forschner Group, Inc. v. Arrow Trading Co., Inc.,* 124 F.3d 402, 408 (2d Cir.1997) (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 34 (2d Cir.1995)). Gucci's actions are not properly construed as misappropriation in this context because they reflect a universal and generally applicable store policy intended to prevent the return of counterfeit goods. *See, e.g., Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.,* 672 F.2d 1095, 1105 (2d Cir.1982) (noting that "[a]n unfair competition claim involving misappropriation usually concerns the taking and use of the [claimant's] property to compete against the [claimant's] own use of the same property ...."), *cert. denied,* 459 U.S. 826, 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *Leonard Storch Enters., Inc. v. Mergenthaler Linotype Co.,* No. 78 Civ. 238, 1979 WL 1067, at *7 (E.D.N.Y. Apr. 5, 1979) (noting that liability exists where businesses "take a 'free ride' on what a competitor had done."); *Metropolitan Opera Ass'n v. Wagner–Nichols Recorder Corp.,* 199 Misc. 786, 101 N.Y.S.2d 483, 490 (N.Y.Sup.Ct.1950) (noting that the tort of unfair competition involves "endeavoring to reap where [one] has not sown ...."),

*aff'd,* 279 A.D. 632, 107 N.Y.S.2d 795, 797 (1st Dep't 1951) (per curiam). Gucci applies this policy indiscriminately, even, by the Defendants own admission, to its own goods. (Answer, ¶ 25.)

Similarly, even assuming Gucci's actions harmed DFA's sales and revenues, thus impacting the Defendants' return on their investment, such harm does not constitute misappropriation of this investment because any attendant increase in Gucci's sales was in no way furthered by DFA's expenditures to market its own products. For these reasons, this cause of action is not properly construed as one of unfair competition and is, instead, more appropriately treated as one of product disparagement; at bottom, the Answer alleges that Gucci's treatment and characterization of DFA's products as counterfeit merely "denigrates the quality of [DFA's] goods or services ...." *Ruder & Finn,* 52 N.Y.2d at 670, 439 N.Y.S.2d 858, 422 N.E.2d 518; *accord Cubby,* 776 F.Supp. at 141.

■ Alternatively, if this cause of action were to be construed as one of unfair competition, it would arise under a distinct subcategory known as unfair competition by disparagement. A claim of unfair competition by disparagement is a distinct variation requiring that the claimant "generally must allege and prove malice and special damages" to properly state a claim for relief. *Drug Research,* 199 N.Y.S.2d 33, 166 N.E.2d at 322; *see Payrolls & Tabulating, Inc. v. Sperry Rand Corp.,* 22 A.D.2d 595, 257 N.Y.S.2d 884, 887 (1st Dep't 1965); *Cubby,* 776 F.Supp. at 141. Such a claim may be actionable *per se,* meaning special damages need not be asserted, but "[o]nly if the false disparagement *directly* maligns the character of the *owner* of the goods is it actionable *per se." Fashion Boutique of Short Hills,* 1992 WL 170559, at *4 (emphasis added) (citing *Payrolls & Tabulating,* 257 N.Y.S.2d at 887). Gucci's alleged conduct does not "directly malign the character" of DFA. Even accepting all of Defendants' allegations as true, the alleged disparaging statements by Gucci were generally directed at any product that lacked a receipt, not specifically at DFA or DFA's goods, as evidenced by Defendants' allegation that Gucci refused to take back even its own goods without a receipt. (Answer, ¶¶ 24–25.) Therefore, even if the Defendants' counterclaim is construed as unfair competition by disparagement, malice and special damages must be alleged to properly state this claim.

■ Under either formulation, then, to properly state a claim for which relief can be granted, Defendants must allege special damages. This Court has previously addressed the pleading requirements for special damages, explaining: "[t]he rules surrounding the pleading and proof of special damages are stringent and well-articulated. Special damages are limited to losses having pecuniary or economic value and must be *fully and accurately stated, with sufficient particularity to identify actual losses." Kirby,* 784 F.Supp. at 1116 (citations omitted; emphasis added; internal quotations omitted); *see Drug Research,* 199 N.Y.S.2d 33, 166 N.E.2d at 322; *Matherson v. Marchello,* 100 A.D.2d 233, 473 N.Y.S.2d 998, 1000–1001 (2nd Dep't 1984). Additionally, special damages must be the "'natural and immediate consequence of the disparaging statements' to be recoverable." *Kirby,* 784 F.Supp. at 1116 (quoting *Angio–Medical,* 720 F.Supp. at 274); *Cambridge Assocs. v. Inland Vale Farm Co.,* 116 A.D.2d 684, 497 N.Y.S.2d 751, 753 (2nd Dep't 1986).

■ Moreover, it is well-settled that "when loss of business is claimed, the persons who cease to be customers must be named *and* the losses itemized .... Round

figures or a general allegation of a dollar amount as special damages do not suffice .... Where [the complainant] does not itemize but rather approximates its damages, in a round figure ... [t]he Court finds this is insufficient as a matter of law." *Procter & Gamble Co. v. Quality King Distribs., Inc.,* 974 F.Supp. 190, 198–99 (E.D.N.Y.1997) (citations omitted; internal quotations omitted); *accord Fashion Boutique of Short Hills,* 1992 WL 170559, at *4; *Payrolls & Tabulating,* 257 N.Y.S.2d at 887. For example, in *Fashion Boutique of Short Hills,* the Court found that the plaintiff met the requisite standard by naming three particular customers that it had lost, which sufficed given the smallness market. 1992 WL 170559, at *4.

Defendants' pleadings in this case fall short of this standard because they merely state a general, cumulative figure of DFA's losses allegedly caused by Gucci's behavior. Defendants allege damages only in the form of a general figure of "not less than $50,000" with respect to their second counterclaim. (Answer, ¶ 31.) Since they neither itemize their losses nor name customers that DFA allegedly has lost by reason of Gucci's behavior, the claim must be dismissed for failure to plead special damages with sufficient particularity.[7] *See Kirby,* 784 F.Supp. at 1116 (noting that the special damages requirement goes to the very heart of a cause of action, and that courts apply this requirement strictly and routinely grant motions to dismiss for failure to allege special damages with the requisite specificity); *Angio–Medical,* 720 F.Supp. at 274.

### III. CONCLUSION AND ORDER

For the reasons discussed above, it is hereby,

**ORDERED** that Gucci's motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Defendants' counterclaims, which allege violations of N.Y. GBL § 349 and also unfair competition under New York law, is **GRANTED.**

**SO ORDERED.**

---

7. Gucci also argues in its motion to dismiss that Defendants' second counterclaim should be dismissed for failure to meet the heightened pleading standard for special damages under Fed.R.Civ.P. 9(g). Because the Court concludes that this counterclaim must be dismissed for failure to plead all necessary elements of this claim under New York law, the Court need not address this alternative argument.