**TIME, INC., Plaintiff–Counter–
Defendant–Appellee,**

v.

**PETERSEN PUBLISHING COMPANY
L.L.C., Defendant–Counter–
Claimant–Appellant.**

**Docket No. 98–7589.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 9, 1998.

Decided April 14, 1999.

Thomas C. Morrison, Patterson, Belknap, Webb & Tyler LLP, New York, N.Y. (Marc S. Reiner, on the brief; Paul G. Gardephe, Associate General Counsel, Time, Inc., of counsel ), for Plaintiff–Counter–Defendant–Appellee.

Steven G. Bradbury, Kirkland & Ellis, Washington, D.C. (John P. Frantz, on the brief; Donald G. Kempf, Jr., P.C., David M. Elston, Kirkland & Ellis, Chicago, Illinois, of counsel ), for Defendant–Counter–Claimant–Appellant.

Before: KEARSE, WALKER, and STRAUB, Circuit Judges.

JOHN M. WALKER, Jr., Circuit Judge:

Petersen Publishing Company L.L.C., the publisher of Teen magazine, appeals from the March 27, 1998 judgment of the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge* ), that was entered after a jury found that Time, Inc., the publisher of People magazine, had not infringed Petersen's Teen trademark by publishing a new magazine entitled Teen People.

Petersen's principal argument is that the district court's statement of law in a supplemental jury instruction was both erroneous and prejudicial, requiring a reversal. We disagree and affirm the judgment of the district court.

## BACKGROUND

Petersen has published Teen magazine since 1957. Time has published People magazine since 1974. In 1997, seeking to expand their businesses, each publisher

was working separately on a new magazine, and each wanted to name its new magazine Teen People. We need not concern ourselves over whether this desire to use the same name was driven by mutual admiration, or simply a shared lack of creativity. The fact is that, when each learned of the other's plans, both were displeased at the prospect of sharing the name and decided to do something about it.

Time, the first to reach the courthouse door, filed this action on August 7, 1997, to enjoin Petersen's use of the name Teen People. Time claimed the right to use the name due to its marketing and publicity efforts, and also alleged that Petersen's use of the name Teen People would infringe Time's People trademark. Petersen responded by agreeing not to use the contested title without giving advance notice to Time, and at one point was prepared to abandon the name entirely. However, after Time indicated its continuing intention to launch its own Teen People magazine, Petersen's answer pleaded counterclaims against Time that specifically asserted that Time's Teen People would infringe Petersen's Teen trademark.

Petersen moved for a temporary restraining order and a preliminary injunction. The district court held a hearing on the motion on August 28 and 29, 1997, and denied the TRO and the preliminary injunction after Time stipulated to the appearance of its forthcoming Teen People logo. On February 13, 1998, the district court denied Time's motion for summary judgment and set down the case for trial.

The cause was tried to a jury in March of 1998. Petersen's central contention was that Time was improperly attempting to profit from the strength of Petersen's Teen mark; Time's defense was that its only intention was to build on the strength of its own People Magazine. During the trial, the district court dismissed Petersen's claims for licensing royalties, diminution of trademark value, and trademark dilution. Petersen's claims for trademark infringement and unfair competition went to the jury.

After deliberating for a few hours, the jury sent to the district court the following question: "Does changing Teen's trademark from Teen with the apostrophe to Teen without the apostrophe mean that it is still a valid trademark for Petersen's Teen or does it weaken it/void it?" This question referred to a change Petersen made in July of 1997, when it switched its logo from one in all capital letters, preceded by an apostrophe ('TEEN), to one with no apostrophe and a single, initial capital letter (Teen). Over Petersen's objection, the district court responded with the following supplemental instruction:

> Petersen's federal trademark registration is for the word teen and the particular design depicted in its federal registration, i.e., with an apostrophe and in italicized capital letters. This trademark registration is still valid and in effect. As to the new logo that Petersen adopted in July 1997, Petersen may have common law rights in the new design. It is for you to determine whether Petersen has acquired common law trademark rights in that new design. And to determine from, you will see in my charges at least in one aspect of the charges, to determine how strong those rights are.
>
> Keep in mind, too, the scope of protection for a trademark is not limited to an exact replication of the mark as it appears on the registration certificate. Rather, the scope of protection of the mark is bounded by the line at which there is a likelihood of confusion of the people who are in fact buying the product caused by another's use of the same or similar mark.

The district court also referred the jury back to its earlier instructions.

After receiving the supplemental charge, the jury returned to its deliberations. Later that afternoon the jury sent a note to the district court to the effect that it was

having difficulty reaching a verdict. The district court sent the jury home for the night. The next day the jury reached a unanimous verdict in favor of Time. This appeal followed.

## DISCUSSION

### I. *Trademark Infringement Generally*

Before discussing the specific question presented on this appeal, it is useful to outline the law of trademark infringement. The Lanham Act prohibits the use in commerce, without consent, of any "registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods," in a way that is likely to cause confusion. 15 U.S.C. § 1114(1)(a). The Act similarly prohibits the infringement of unregistered, common law trademarks. *See id.* § 1125(a)(1). Petersen brought counterclaims of trademark infringement against Time under both of these provisions.

 To prevail on a trademark infringement claim under either of these provisions, a plaintiff must demonstrate that " 'it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion.' " *Arrow Fastener Co. v. Stanley Works,* 59 F.3d 384, 390 (2d Cir.1995) (quoting *Gruner + Jahr USA Publishing v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir.1993)). A mark is entitled to protection when it is inherently distinctive; if the mark is "merely descriptive," 15 U.S.C. § 1052(e), it qualifies for protection only if it has acquired secondary meaning, i.e., if it "has become distinctive of the ... goods in commerce," *id.* § 1052(f). "Secondary meaning attaches when 'the name and the business have become synonymous in the mind of the public, submerging the primary meaning of the term in favor of its meaning as a word identifying that business.' " *Arrow,* 59 F.3d at 390 (quoting *Pirone v. MacMillan, Inc.,* 894 F.2d 579, 583 (2d Cir.1990)).

 If a mark is valid, its possessor, in order to succeed on its infringement claim, must prove that "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." *Gruner + Jahr,* 991 F.2d at 1077. Under the law of this circuit, courts must consider Judge Henry Friendly's *Polaroid* factors to decide whether a plaintiff has established a likelihood of confusion:

> (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will 'bridge the gap' ...; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers.

*Arrow,* 59 F.3d at 391 (citing *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.1961)).

Many of these factors received considerable attention at trial. Petersen and Time introduced consumer studies, documentary evidence, and witnesses in an effort to prove the presence or lack of good faith, consumer confusion, and similarity between the Teen and Teen People marks (as well as the similarity between Time's People and Teen People marks). On appeal, however, Petersen's sole challenge is to the district court's supplemental instruction. This instruction related only to the first *Polaroid* factor, the strength of Petersen's trademark, and to it we now turn.

 The strength, or distinctiveness, of a mark is its power to identify the source of a product. *See Streetwise Maps, Inc. v. Vandam, Inc.,* 159 F.3d 739, 743 (2d Cir. 1998). In somewhat circular fashion, consideration of this factor includes an evaluation of the same characteristics that initially determined a mark's validity: inherent distinctiveness, descriptiveness, and secondary meaning.

118

■ There are four categories along the spectrum of possible trademarks: generic, descriptive, suggestive, and arbitrary or fanciful. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976) (Friendly, J.). A generic mark (e.g., "Magazine" as a magazine title) receives no trademark protection. *See id.* The other three categories of marks may be valid trademarks deserving of protection, and the mark's classification is also relevant in determining the strength of the mark.

■ The strongest marks are arbitrary or fanciful marks, which are entitled to the fullest protection against infringement. *See id.* at 11. The next strongest are suggestive marks, which require "imagination, thought and perception to reach a conclusion as to the nature of goods." *Id.* (quoting *Stix Prods., Inc. v. United Merchants & Mfrs. Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968)). A mark that is merely descriptive of its product is entitled to somewhat less protection. At common law, a merely descriptive mark could not be a valid trademark, *see id.* at 9 (citing *Delaware & Hudson Canal Co. v. Clark*, 80 U.S. (13 Wall.) 311, 323, 20 L.Ed. 581 (1871)), but as trademark law developed, these marks were accorded legal protection if they had acquired secondary meaning, *see id.* With regard to all valid marks, the stronger the secondary meaning, the stronger the mark for the purpose of the first *Polaroid* factor.

■ Along with the inherent distinctiveness of a mark, the mark's distinctiveness in the marketplace also must be considered in determining its strength. *See Streetwise*, 159 F.3d at 743–44. The use of part or all of the mark by third parties weakens its overall strength. *See id.* at 744 (finding that extensive use of word "street" as a mark for maps weakened "Streetwise" as a trademark).

■ Registration under the Lanham Act is also pertinent to a mark's strength. *See Gruner + Jahr*, 991 F.2d at 1077.

Registration allows a merely descriptive mark to become incontestable on the basis of lack of secondary meaning. *See* 15 U.S.C. §§ 1065, 1115(b); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). However, while incontestability relates to a trademark's strength, it does not alter the breadth of infringement protection that a mark is accorded. As a general matter, registration creates no substantive trademark rights against infringement beyond the common law rights acquired through use of the mark. *See La Societe Anonyme des Parfums LeGalion v. Jean Patou, Inc.*, 495 F.2d 1265, 1270 n. 5 (2d Cir.1974); *Clairol Inc. v. Gillette Co.*, 389 F.2d 264, 267 (2d Cir.1968). The test for infringement of a registered or unregistered trademark is the same: the likelihood of consumer confusion as to the source of the allegedly infringing product. *See American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 664 (2d Cir.1979).

■ It is also relevant that the law of trademark accords stronger protection to the stylized version of certain words used as trademarks than to those words themselves. In *Gruner + Jahr*, the plaintiff claimed that defendant's magazine Parent's Digest infringed the trademark of its magazine Parents. 991 F.2d at 1075. We observed that the mark's registration "protect[ed] not the name or the word 'parents,' but rather the stylized logo of that name," and left undisturbed the district court's factual finding that the "'parents' portion of the mark—divorced from the stylized typeface and its particular placement on the magazine cover—was extremely weak." *Id.* at 1078. These statements, made in the context of a registered mark, are no less true under the common law of trademark infringement.

## II. *The Jury Charge In This Case*

■ "A jury charge is erroneous if it misleads the jury as to the correct legal standard, or if it does not adequately inform the jury of the law." *Hathaway v.*

*Coughlin,* 99 F.3d 550, 552 (2d Cir.1996). When examining a supplemental instruction, the original and supplemental charges must be considered together; "[i]t is basic law that a jury charge should be examined in its entirety, not scrutinized strand-by-strand." *Warren v. Dwyer,* 906 F.2d 70, 73 (2d Cir.1990). We will reverse a jury verdict due to an erroneous instruction only if we are persuaded "that the error was prejudicial or the charge was highly confusing." *Id.*

In his original charge regarding the strength of the mark, Judge Baer instructed the jury about the different categories of marks, and about the need to prove secondary meaning in order to protect a descriptive mark. He instructed that the sales success of Teen magazine could contribute to a finding of secondary meaning, and significantly, that the "length and exclusivity" of the mark's use was also a consideration. At the end of his original charge relating to the strength of the mark, Judge Baer underscored that "the ultimate issue is whether the defendant's use of the mark is likely to cause confusion among ordinary purchasers of the magazine as to the source of the product." Petersen takes no issue with any of these instructions.

Petersen contends that the district court erred, however, when it stated in its supplemental charge, with reference to Petersen's adoption of a new logo in July, 1997, that "it is for you to determine whether Petersen has acquired common law trademark rights in that new design." Petersen insists that this charge "effectively instruct[ed] the jury that it should disregard the previous 40 years of Petersen's continuous use" of the Teen mark. Petersen argues that the district court's charge compelled the jury to ignore the common law rights that accrued over that period of use. Reviewing the entire charge, both original and supplemental, in light of the applicable legal standards, we disagree.

The district court was correct to distinguish between the new stylized logo and the previous one. As *Gruner + Jahr* made clear, trademark rights in the stylized appearance of a word are distinct from trademark rights in the word itself. *See* 991 F.2d at 1077–78. The earlier registered trademark held by Petersen protects not only the word Teen, but also a particular stylized version of that word, a version no longer employed by Petersen. To the extent that Petersen acquired common law rights in the new design of the word, they could only have been acquired after use of that new design commenced.

Petersen also possesses trademark rights in the word itself that began accruing from its earliest use of the word Teen. The district court's instructions did not preclude the jury from considering whether these rights had been infringed. Judge Baer's supplemental charge made it clear that protection from infringement was "not limited to an exact replication of the mark." And by referring back to his original charge, he reiterated that the entire history of Petersen's use was legally significant.

The district court might have done better to emphasize more clearly the difference between rights in a word and rights in a particular version of that word. It is not at all certain whether, if this had occurred, Petersen's case would have been assisted. We remain unpersuaded that the supplemental charge did any of the damage of which Petersen complains. Judge Baer made plain to the jury that "the bottom line" in the case, as in most trademark cases, was whether there was a likelihood of consumer confusion. *Gruner + Jahr,* 991 F.2d at 1074. The jury found in favor of Time, and the charge was neither so prejudicial nor so confusing as to warrant reversal.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is affirmed.