Dorothy HUDSON, Plaintiff,

John B. Ellison, Plaintiff–Appellant,

v.

NEW YORK CITY, Robert Cividanes, and several unknown named City of New York Police Officers of the 105th Precinct—Queens, N.Y.—Who entered the premises known as 99–19 215th Street Queens Village, N.Y. on the night of September 21, 1993, Thomas Urban, P.O., John Healy, P.O., Brian McGowan, P.O., Neil Hellers, Scott Olexa, Michael Rooney, P.O., Robert Musmacher, P.O., Defendants–Appellees.

Docket No. 99–7256.

United States Court of Appeals,
Second Circuit.

Argued June 1, 2001.

Decided Nov. 1, 2001.

John B. Ellison, New York, NY, for appellant.

Cheryl Payer (Stephen J. McGrath, of counsel), for Michael D. Hess, Corporation Counsel for the City of New York, for appellees.

Before WALKER, Chief Judge, CALABRESI, POOLER, Circuit Judges.

CALABRESI, Circuit Judge:

John Ellison ("Ellison") appeals from a jury verdict in favor of current and retired officers of the New York City Police Department (collectively "police officers" or "defendants") on his 42 U.S.C. § 1983 claim that defendants searched his home in violation of the Fourth Amendment. In particular, Ellison challenges the district court's (Melancon, J.) instructions to the jury, claiming that in order to render a verdict favorable to Ellison the jury may have believed that it had to find that de-

fendants intentionally violated plaintiff's rights.

## I. Background

In 1995, Ellison, *pro se*, filed a complaint in the United States District Court for the Eastern District of New York (Ross, *J.*) [1] against the City of New York ("the City"), New York City Police Precinct Captain Robert Cividanes, and Police Officers Thomas Urban, Neil Hellers, Michael Rooney, Brian McGowan, Scott Olexa, and John Healy.[2] Ellison alleged that defendants violated his Fourth Amendment rights by conducting a warrantless search of his apartment while looking for two men who were suspected of robbing, at gunpoint, a livery cab driver. He also asserted claims against the supervising police officers and the City for failure properly to supervise, investigate, discipline and/or remove the officers who conducted the putatively unconstitutional search.[3]

According to Ellison, the following events occurred on the night of September 21, 1993. Ellison was returning to his Queens apartment on 215th Street at approximately 9:30 p.m. when he noticed several police cars, with lights flashing, parked near his home. After observing the scene for some time with other onlookers, Ellison tried to get to his apartment. He was advised by a police officer that he could not do so, and he continued to wait. According to his complaint, after twenty to thirty minutes, Ellison saw officers place a hand-cuffed man in a police car. Ellison then informed a police officer that he was

going to return to his apartment, and the officer told him not to come back outside that night. Ellison stated that shortly after he went into his apartment, he left it again, informing the officers that he would be right back. He said that he did not "slam lock" the outer back door that leads to the building's backyard, but that he did lock his apartment door.

When Ellison returned to his apartment, he discovered that, while he was gone, police officers had entered the apartment house, broken open the door to his individual apartment, and searched the apartment. Plaintiff found previously closed doors and dresser drawers opened, his bed overturned, and the entrance door to his apartment open and broken, with the door-frame molding damaged. In response to Ellison's inquiries, the officers on the scene told him that they had discovered the back door of the apartment house open and had gone into the building to look for the escaped suspect. The officers had also entered and searched at least one other apartment in the building.

The parties have never disputed that a warrantless search took place. Rather, throughout these proceedings they have differed as to whether the search was objectively reasonable. Defendants have claimed that this behavior was justified by the exigent circumstances of an armed suspect still at large. Thus, at trial, Ellison called as witnesses the police officers who were involved with the search of his apartment building. These officers said that Ellison's building was one of the last with-

---

1. After summary judgment and before trial, the case was transferred from Judge Ross to Tucker L. Melancon, United States District Judge for the Western District of Louisiana, who sat by designation.

2. Dorothy Hudson originally joined Ellison as co-plaintiff, but her claims were dismissed at an earlier stage of these proceedings.

3. Ellison also claimed violations of 42 U.S.C. §§ 1981 and 1985, as well as various state laws. Judge Ross granted defendants summary judgment on these claims, and Ellison does not appeal those determinations.

in the designated search grid to be inspected. The officers further testified that they entered the building without a warrant because, at the time: (1) they were searching for armed men (at the time they did not know that one had been apprehended already); (2) the door to Ellison's building, unlike the other's they had surveyed, was ajar and appeared to have been forced open; and (3) they were concerned that the armed suspects may have gone inside Ellison's building and may hurt innocent residents or take them hostage. The officers also stated that, once inside Ellison's apartment, they looked only in places where a person could hide; for example, under the bed or in a closet. Additionally, the officers testified that they were in Ellison's apartment five minutes or less.

As noted above, the officers participating in the search emphasized that marks were visible indicating that a forcible entry had been made through the outer door of Ellison's building. Those marks, in the officers' view, justified their belief that the suspect had gotten into the building. But Ellison has consistently maintained that no such marks were evident, and that the search was objectively unreasonable, and therefore constituted a violation of the Fourth Amendment.

In the district court, defendants moved for summary judgment pursuant to Fed. R.Civ.P. 56. The court agreed with the City that Ellison had not adduced evidence that any of the City's practices or policies contributed to, or caused, the allegedly unconstitutional search. It therefore granted summary judgment for the City on the basis of *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct.

2018, 56 L.Ed.2d 611 (1978). The court also granted summary judgment for defendants Cividanes and Olexa, who had not personally participated in the search. The court denied, however, a motion for summary judgment on qualified immunity grounds brought by officers Musmacher and Rooney. It concluded that "the. key facts surrounding the question of whether there was sufficient basis upon which a reasonable officer might find probable cause to enter [Ellison's] apartment ... remain in dispute." [4]

As a result of these rulings, the case went to trial with respect to Musmacher, Rooney, Urban, Hellers, McGowan, and Healy—the officers who had personally participated in the search. Judge Melancon presided. Before the close of evidence, the district court provided the parties copies of proposed jury instructions. Ellison, still representing himself, objected that the instructions incorrectly informed the jury that it had to find that the officers intentionally violated his constitutional rights. The government responded that "to prove any constitutional violation, there must be a showing of an intentional or malicious, certainly a reckless disregard for the person's rights." The court agreed: "1983 is not a negligence action. That's not what we're talking about here."

Judge Melancon charged the jury:

In order to prove his claim under this statute, the plaintiff must establish by a preponderance of the evidence each of the following elements:

First, that the defendant acted under color of authority of the State of New York;

---

4. The other officers involved in the search did not move for summary judgment. The disposition of Musmacher and Rooney's summary judgment motion made clear, however, that summary judgment would not be granted for any of the individual officers who participated directly in the search.

Second, that the defendant *intentionally committed acts which operated to deprive the plaintiff* of the right secured by the Constitution of the United States;

Three, that the defendant's act was the legal cause of the plaintiff's damages.

Though this part of the district court's instruction is probably not problematic,[5] earlier in the instructions, the court had told the jury that:

In this case, the plaintiff claims that the defendants while acting under color of authority of the State of New York as police officers *intentionally or with reckless disregard violated* the plaintiff's *constitutional rights* by unlawfully searching his apartment without a warrant. As a result of the defendant's [sic] actions, the plaintiff claims that he suffered damages. The constitutional right that the plaintiff claims the defendants violated is the right to be free of unreasonable searches and seizures.

Under the Fourth Amendment to the Constitution of the United States, a citizen has a right to be free of unreasonable searches and seizures.

Section 1983 of Title 42 of the United States Code provides that any citizen

may seek redress in this court by way of an action for money damages *against any person who*, under color of law, color of state law or custom, *intentionally deprives that citizen of any rights*, privileges or immunities secured or protected by the Constitution or laws of the United States.

After deliberation, the jury concluded that there had been no Fourth Amendment violation, and judgment was entered in favor of defendants.

■ Plaintiff appeals. His primary contention is that the district court erroneously instructed the jury that a plaintiff must prove that defendants intentionally violated his rights in order to make out a successful Fourth Amendment claim under § 1983.[6]

*II. Discussion*

■ We review jury instructions *de novo*. *See United States v. Bok*, 156 F.3d 157, 160 (2d Cir.1998). Instructions are erroneous if they "mislead[ ] the jury as to the correct legal standard or ... [do] not adequately inform the jury of the law." *Hathaway v. Coughlin*, 99 F.3d 550, 552 (2d Cir.1996). Objectionable instructions are considered in the context of the entire

---

5. While the charge that the jury had to find that the defendants *acted* intentionally when they searched Ellison's apartment is likely correct, *see* note 7 and accompanying text, there is no doubt that in the case before us, defendants' acts *were* intentional. As a result, the unnecessary reference to intentionality, even if correct in itself, is apt to be confusing to a jury given that, as we will see soon enough, it was preceded by incorrect requirements that defendants intended to violate plaintiff's rights.

6. Ellison appeals on two other grounds, neither of which is meritorious. First, he challenges Judge Ross's grant of summary judgment for the City on *Monell* grounds. We affirm Judge Ross's judgment for the City for

substantially the reasons she provided in her opinion.

Second, Ellison argues that because Judge Ross had denied the summary judgment motion of the individual officers on qualified immunity grounds, Judge Melancon erred when he submitted the question to the jury. This argument appears to be based on Ellison's misunderstanding of the meaning and effect of denying defendants' summary judgment motion. Ellison confuses the denial of defendants' motion with a grant of summary judgment for himself. But in denying defendants' motion, Judge Ross did not resolve the qualified immunity issue; she only concluded that there were disputed issues of material fact that precluded any grant of summary judgment.

jury charge, and reversal is required where, "based on a review of the record as a whole, ... the error was prejudicial or the charge was highly confusing." *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1345 (2d Cir.1994) (internal quotation marks and citation omitted); *see also Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 119 (2d Cir.1999).

Judge Melancon undoubtedly instructed the jury that, in order to render a verdict in favor of the plaintiff, it had to find intent on the part of the defendants to violate plaintiff's rights. Twice the court stated that, under § 1983, any violation or deprivation of plaintiff's federal right had to be intentional. Thus, in describing Ellison's cause of action, Judge Melancon said, "[T]he plaintiff claims that the defendants ... intentionally or with reckless disregard violated the plaintiff's constitutional rights by unlawfully searching his apartment without a warrant." And in articulating the scope of § 1983, he repeated that the statute provides redress "against any person who ... intentionally deprives [a] citizen" of federally secured rights.

■■■ These instructions were incorrect. Section 1983 does not require any intent to violate constitutional rights. *See Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir.1992) (stating that "[i]t is well established that specific intent is not a prerequisite to liability under § 1983") (citing *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds, Monell*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611). As a result, § 1983 plaintiffs need only demonstrate intent where the underlying constitutional deprivation, such as an equal protection violation under the Fourteenth Amendment, calls for it. *See, e.g., Gelb v. Bd. of Elections*, 224 F.3d 149, 154 (2d Cir.2000) (requiring intentional or purposeful discrimination for a § 1983 action invoking the Equal Protection Clause to remedy errors in an election process). And § 1983 does not itself import an intent standard into an underlying constitutional deprivation that lacks such a requirement.

■■■ At issue in this case is the Fourth Amendment right to be free of unreasonable searches by the police. The standard used to judge whether such a violation occurred is that of "objective reasonableness." *See Graham v. Connor*, 490 U.S. 386, 399, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *see also Anderson v. Branen*, 17 F.3d 552, 558 (2d Cir.1994). The Supreme Court has made clear that an officer's subjective intent is irrelevant under this standard. In *Scott v. United States*, 436 U.S. 128, 137–39, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), the Court emphasized that challenged searches are judged "without regard to the underlying intent or motivation of the officers involved." *Id.* at 138, 98 S.Ct. 1717. Since *Scott*, the Court has extended the objective reasonableness standard from searches to other types of Fourth Amendment violations, like excessive force. *See Graham*, 490 U.S. at 397, 109 S.Ct. 1865 ("As in other Fourth Amendment contexts, ... the 'reasonableness' inquiry ... is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").

■■■ Defendants contend that "the District Court properly instructed the jury that plaintiff had the burden of proving that the defendant acted intentionally." They rely on a series of Fourth Amendment seizure cases that distinguish between *seizures* that result from an "intentional acquisition of physical control" and *effects* that result from an "unknowing act," such as when "a parked and unoccupied police car slips its brake and pins a

passerby against a wall." *Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). As *Brower* makes clear, the latter are not seizures for Fourth Amendment purposes. *See id.* at 596–97, 109 S.Ct. 1378.

■■ But, assuming it to be true—as we readily do—that all Fourth Amendment violations require intentional *actions* by officers, rather than "the accidental effects of otherwise lawful government conduct," *id.* at 596, 109 S.Ct. 1378; *see Medeiros v. O'Connell*, 150 F.3d 164, 167–68 (2d Cir.1998),[7] the district court's instructions on intentionality went well beyond restating this requirement. The district court's statement that the jury had to find that "the defendant intentionally committed acts which operated to deprive the plaintiff of the right secured by the Constitution" might well be taken to mean that defendants' search of Ellison's house could not simply be accidental. However, two additional and distinct references to intent in the instructions were plainly incorrect and misleading.

When Judge Melancon instructed the jury that "the plaintiff claims that the defendants ... intentionally or with reckless disregard violated the plaintiff's constitutional rights by unlawfully searching his apartment without a warrant," and when he later told the jurors that "Section 1983 ... provides that any citizen may seek redress ... against any person who ... intentionally deprives that citizen of any [federal] rights," he was clearly referring to a level of intentionality that neither § 1983 nor the Fourth Amendment requires. The cases defendants cite on the intentionality of the officers' actions have

no bearing on these two additional references which go directly to the officers' *mens rea*. As a result, we find Judge Melancon's instructions confusing as to whether only an intentional act on the part of the individual defendants was needed or whether an intentional violation of a constitutional right was also a prerequisite for liability.

■■ Defendants argue that even if the district court improperly instructed the jury that intent to violate plaintiff's Fourth Amendment rights was required, the court later cured any defect. To be sure, Judge Melancon did state the correct standard (of "objective reasonableness") toward the end of his discussion of § 1983 liability for Fourth Amendment violations:

> Probable cause exists when an officer has knowledge of facts and circumstances where are collectively of such weight and persuasiveness to convince a person of ordinary intelligence, judgement and experience that it is reasonably likely a crime is about to be committed or has been committed. In other words, probable cause exists when an officer has knowledge of facts and circumstances sufficient to warrant a prudent person in believing a crime has been or is about to be committed.
>
> The existence of probable cause is measured as of the moment of the police action, not on later developments. In other words, you must consider whether at the moment when the police officers entered the plaintiff's apartment it was objectively reasonable for the police officers to believe that it was likely that a suspect would escape or was committing or about to commit a crime.

---

**7.** The cases defendants cite all involved *seizures* allegedly in violation of the Fourth Amendment. We have found no cases addressing the liability of government officers for analogous *searches*. We assume *arguendo* that *Brower* and *Medeiros* would apply to such searches, but, as it is not necessary to the disposition of this case, we need not decide that question.

■ We reject the notion, however, that a court's earlier incorrect statements are necessarily "cured" so long as the charge contains the correct standard elsewhere. Our precedents do not stand for any such proposition. They emphasize, rather, that the instructions must be considered as a whole. *See Terminate Control*, 28 F.3d at 1345. And *Anderson*, 17 F.3d 552, upon which defendants heavily rely, is not to the contrary.

As an initial matter, plaintiffs in *Anderson* had failed to object to the intentionality instruction, so we assessed the charge for plain error only. The *Anderson* plaintiffs were burdened, therefore, with demonstrating "that the district court's error in charging the jury was *fatal to the integrity of the trial*." *Id.* at 558 (emphasis added). Here, instead, because the plaintiff did object, the error need only be *"prejudicial or the charge ... highly confusing."* *Terminate Control*, 28 F.3d at 1345 (emphasis added).

■ Moreover, the jury instructions in *Anderson* and in the instant case contain nearly reversed proportions of correct and incorrect instructions. In *Anderson*, the district court *"mentioned* that the jurors could consider whether the officers acted in good faith or whether they acted maliciously," and then charged the jury "clearly" and correctly on the objective reasonableness standard. *Anderson*, 17 F.3d at

559 (emphasis added). Significantly, the *Anderson* court discussed "objective reasonableness"—in slightly varying, but always correct, language—no fewer than four times. *Id.* By way of contrast, in the case before us, while the district court properly set forth the correct standard near the end of its charge, the district court stated the incorrect requirement of an intentional rights violation at least twice at the outset.

Reviewing Judge Melancon's instructions as a whole, we find the mention of the correct standard inadequate. After reading and rereading the charge, we conclude that it was confusing as to whether intent to do wrong was required to find a violation of Ellison's Fourth Amendment rights.[8]

We also find prejudice. Defendants argue that since the jury found no violation of the Fourth Amendment, any errors in the jury instructions on § 1983 liability were harmless. But in context, the two issues cannot be treated separately. Ellison contended that the officers had violated his rights by unreasonably searching his home. The jurors were told to determine whether the officers had intended to violate Ellison's rights. The district court incorrectly stated that § 1983 required an intentional rights violation, and the only right Ellison claimed was violated was his Fourth Amendment right to be free from

8. Ellison argues that the district court compounded its errors in the instructions on liability with additional errors when it dealt with qualified immunity. The district court charged the jury: If "you find from the preponderance of the evidence that the plaintiff has proved either, one, that the defendants were plainly incompetent or, two, they knowingly or with reckless disregard violated the law regarding the plaintiff's constitutional rights, you must find for the plaintiff." Ellison may well be correct that this instruction was erroneous. *See Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) ("A government actor performing a discretionary task is entitled to immunity from § 1983 suits if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." (internal quotation marks omitted)). Because the jury answered its first question-whether a Fourth Amendment violation occurred-in the negative, however, it never reached the question of qualified immunity. As a result, we need not review the district court's instructions on qualified immunity.

unreasonable searches (a right that has no intent requirement). It is, therefore, quite possible that the jury's finding that no Fourth Amendment violation occurred resulted from its mistaken belief that every rights violation under § 1983, including those involving the Fourth Amendment, must be intentional. In light of this confusion, we do not know whether a correctly charged jury would have rendered a different verdict. Under the circumstances, the prudent course is to vacate the judgment of the district court and to remand for a new trial.

### III. Conclusion

We agree with Ellison that Judge Melancon's jury instructions were incorrect and confusing on the question of intent. Accordingly, we VACATE the judgment below and REMAND for a new trial consistent with this opinion.[9] At the same time, we find that Judge Ross's grant of summary judgment to the City was correct, and we AFFIRM that judgment.

9. The district court may wish to consider, if Ellison so requests, the appointment of counsel in this not uncomplicated case.