James VAN PRAAGH, Plaintiff,

v.

Lynn GRATTON, Defendant.

No. 13–CV–375 (ADS)(AKT).

United States District Court,
E.D. New York.

Jan. 28, 2014.

Buchanan Ingersoll & Rooney PC, New York, NY, By Philip L. Hirschhorn, Esq., of Counsel, for Plaintiff.

Whyte Hirschboeck Dudek, SC, Madison, WI, By Thomas P. Heneghan, Esq., Melinda S. Giftos, Esq., of Counsel, Mark S. Frey, Esq., New York, NY, for Plaintiff.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On January 22, 2013, the Plaintiff James Van Praagh (the "Plaintiff") commenced this trademark infringement action against his sister, the Defendant Lynn Gratton (the "Defendant"). The Plaintiff accuses the Defendant of (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a); (2) false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); and (4) trademark infringement, unfair competition, trademark dilution and deceptive acts and practices in violation of N.Y. Gen. Bus. Law ("NYGBL") §§ 349 and 360–*l* and New York common law.

Presently before the Court is a Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6) motion by the Defendant to dismiss the Plaintiff's Complaint in its entirety. For the reasons that follow, the Court grants in part and denies in part the Defendant's motion.

## I. BACKGROUND

### A. Rule 12(b) Standard for Considering Factual Allegations and Evidence Outside the Complaint

■ Before reciting the underlying factual allegations of this case, as an initial matter, the Court notes that despite the Defendant's apparent confusion, generally evidence outside of the Complaint may not be considered by the Court when deciding a motion to dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6). *See, e.g., DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 113 (2d Cir.2010) ("In ruling on a motion pursuant to Fed.R.Civ.P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.") (citation and internal question marks omitted); *Hahn v. Rocky Mt. Express Corp.,* No. 11 Civ. 8512(LTS)(GWG), 2012 WL 2930220, at *2 (S.D.N.Y. June 16, 2012) ("When deciding a motion to dismiss ... [e]vidence outside [the complaint] ... cannot [ ] be considered on review of a 12(b)(6) motion.") (citation and internal quotation marks and alterations omitted).

■ Rather, pursuant to Fed.R.Civ.P. 12(d), where matters outside the complaint are presented in connection with a Rule 12(b)(6) motion, "a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material.' " *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000) (quoting *Fonte v. Bd. of Managers of Continental Towers Condo.,* 848 F.2d 24, 25 (2d Cir.1988)).

■ In this case, the Court declines to convert the Plaintiff's motion to dismiss to one for summary judgment. Thus, while the Defendant repeatedly attempts to counter the Plaintiff's Complaint with her own factual allegations not alleged in the Complaint, these allegations cannot be considered by the Court at this stage of the litigation. *See, e.g., Dual Groupe, LLC v. Gans–Mex LLC,* 932 F.Supp.2d 569, 572 (S.D.N.Y.2013) ("Defendants dispute many of the complaint's factual allegations, which the court cannot adjudicate at the motion to dismiss stage.") Nevertheless, in its analysis, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [the] [P]laintiff['s] possession or of which [the] [P]laintiff[ ] had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir.1993)

■ In this regard, the Court will consider the Defendant's website, as it was incorporated by reference in the Plaintiff's Complaint. (*See* Compl., ¶ 17.) However, the Court declines to take judicial notice of the death of the Defendant's husband, Dennis Gratton, on June 7, 2000, since the Defendant has failed to provide the Court with a copy of Dennis Gratton's death certificate, which courts generally require. *See Johnson v. Morgenthau,* 160 F.3d 897, 898 (2d Cir.1998) (taking judicial notice that the plaintiff had died because his sister-in law provided the court with a copy of the plaintiff's death certificate); *G–I Holdings, Inc. v. Baron & Budd,* No. 01 Civ. 0216(RWS), 2003 WL 193502, at *8 (S.D.N.Y. Jan. 29, 2003) (in a wrongful

death suit, taking judicial notice of the date of the decedents' deaths where the defendants attached copies of their death certificates to their motion to dismiss). Moreover, even if the Court were to consider the death of the Defendant's husband, it would have no impact on the Court's decision. Lastly, the Court shall consider no additional factual allegations raised by the Defendant in either her motion papers or reply, as none of the Defendant's other factual allegations meet the criteria to allow for their consideration on a motion to dismiss.

Thus, unless otherwise stated, the Court, as it must, draws the following facts from the Plaintiff's Complaint and construes them in a light most favorable to the Plaintiff. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009).

### B. Underlying Factual Allegations

The Plaintiff, a resident of California, and the Defendant, a resident of New York, are siblings. (Compl., ¶¶ 1–2, 13.) While the Defendant and the Plaintiff at one time shared the surname "Van Praagh," the Defendant ceased using "Van Praagh" as her last name when she married on August 28, 1970, at which time she assumed the surname "Gratton" instead. (Compl., ¶ § 13–14.) As such, "Van Praagh" is no longer the Defendant's surname and has not been for more than forty years. (Compl., ¶ 15.)

The Plaintiff purports that for the last twenty years, he has provided spiritual medium services in connection with his name and trademark "James Van Praagh" (the "James Van Praagh Trademark"). (Compl., ¶ 7.) In this regard, while using the James Van Praagh Trademark, he has appeared on syndicated television shows; presented at large conferences and retreats; worked with people throughout the United States and internationally; authored books; maintained a website and online community; and offered seminars. (Compl., ¶¶ 8–9.) According to the Complaint, the Plaintiff "has developed an enormous following and is one of the most recognized spiritual mediums in the world." (Compl., ¶ 10.) He claims that by using the James Van Praagh Trademark in association with his spiritual medium services, books, website, shows and seminars, he "has built valuable good will in his name." (Compl., ¶ 11.)

However, the Plaintiff alleges that in 2010, the Defendant began providing her own spiritual medium services in the State of New York using the surname "Van Praagh," which he also suggests is trademarked by him (the "Van Praagh Trademark"). (Compl., ¶ 15.) Upon learning that the Defendant was using the alleged Van Praagh Trademark, the Plaintiff contacted the defendant and demanded she stop using the name. (Compl., ¶ 16.) However, the Defendant ignored those demands. (Compl., ¶ 16.)

In addition, the Plaintiff claims that the Defendant has used the Van Praagh Trademark while offering her spiritual medium services at various venues throughout the United States and on her websites, Facebook Page, Twitter account and YouTube channel. (Compl., ¶¶ 17–18.) In this regard, the Plaintiff appears to suggest that his sister has marketed her spiritual medium services using the trademarks "Lynn Van Praagh" and "Lynn Van Praagh–Gratton," and that the use of these names overlap with his James Van Praagh Trademark and Van Praagh Trademark. (Compl., ¶ 18.)

With respect to the Defendant's websites, the Plaintiff alleges that the Defendant has registered the domain names "www.lynnievanpraagh.com" and "www.lynnievanpraaghgratton.com." (Compl.,

¶ 17.) According to one of these websites, which as the Court noted above, is incorporated by reference in the Complaint, the Defendant holds herself out as "a Spiritual Medium with the gift of communicating on the other side with those who have passed" and that she "comes from a long line of highly gifted psychics and mediums, it's been her family's gift for many generations." (Def. Mot., Exh. B.) Further, the "about" page of this website includes claims that the Defendant's "mother had the gift as do some of her siblings." (Def. Mot., Exh. B.)

When the Plaintiff discovered that the Defendant, without authorization, was continuing to use and expanding upon her use of the Van Praagh Trademark, he again contacted her and demanded she cease using the Van Praagh Trademark. (Compl., ¶ 19.) However, the Defendant declined to do so. (Compl., ¶ 19.)

Approximately two years after the Defendant began using the Van Praagh name in association with her own spiritual medium services, on October 30, 2012, the Plaintiff registered the James Van Praagh Trademark with the United States Patent and Trademark Office. (Compl., Exh. A.) The federal trademark registration numbers for the James Van Praagh Trademark are U.S. Reg. Nos. 4,233,849 and 4,233,848. Prior to October 30, 2012, the James Van Praagh Trademark was unregistered. It also appears that the Van Praagh Trademark was and remains unregistered.

At the time the Complaint was filed, January 22, 2013, the Defendant was still marketing and providing spiritual medium services throughout the United States while using the Van Praagh Trademark. (Compl., ¶ 20.) The Plaintiff alleges that the Defendant "is knowingly and willingly continuing her unauthorized use of the [Van Praagh] name/trademark to intentionally deceive consumers in the marketplace and trade off the valuable goodwill of Van Praagh's trademarks and reputation." (Compl., ¶ 21.) He claims that this unauthorized use "is likely to cause confusion, mistake and deception of the public as to the identity and origin, and affiliation of or sponsorship between [the Defendant's] and [the Plaintiff's] respective services" and "has cause actual consumer confusion." (Compl., ¶¶ 29–30.)

## II. DISCUSSION

### A. Legal Standard on a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss

It is well-established that a complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In this regard, as suggested above, when deciding a motion to dismiss, a court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 91 (2d Cir.2007).

As such, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. However, "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v.*

*Mills,* 572 F.3d 66, 72 (2d Cir.2009) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937).

**B. As to the Plaintiff's Claims for Trademark Infringement, False Designation of Origin and Unfair Competition Claims**

█ Courts employ substantially similar standards when analyzing claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a); false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under New York common law; and unfair competition under New York common law. *See Richemont North America, Inc. v. Huang,* No. 12 Civ. 4443(KBF), 2013 WL 5345814, at *5 n. 15 (S.D.N.Y. Sept. 24, 2013).

█ In this regard, "[t]o prevail on an infringement action [under the Lanham Act, 15 U.S.C. § 1114(1)(a) ], a plaintiff must demonstrate: (1) 'that it has a valid mark entitled to protection,' and (2) 'that the defendant's use of that mark is likely to cause confusion." *Juicy Couture v. Bella Intern. Ltd.,* 930 F.Supp.2d, 489, 498 (S.D.N.Y.2013) (quoting *Time, Inc. v. Petersen Publ'g Co. LLC,* 173 F.3d 113, 117 (2d Cir.1999)). With respect to determining whether the use of a mark by the defendant will cause confusion,

> [c]ourts look to the following factors ...: (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the competitive proximity of the products in the marketplace; (4) the likelihood that the senior user will "bridge the gap" by moving into the junior's product market; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the respective quality of the products; and (8) the sophistication of the consumers in the relevant market.

*Id.* at 499 (citing *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir. 1961)).

█ As to a federal claim of false designation of origin, which is also referred to as a claim for unfair competition, the Lanham Act, 15 U.S.C. § 1125(a), "prohibits any misrepresentation likely to cause confusion about the source of a product, in particularly the use by any person of [ ] any ... name ... likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association ... with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *L'Oreal USA, Inc. v. Trend Beauty Corp.,* No. 11 Civ. 4187(PA), 2013 WL 4400532, at *14 (S.D.N.Y. Aug. 15, 2013) (quoting 15 U.S.C. § 1125(a)) (third ellipse in the original). "[T]he standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114)." *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.,* 220 F.Supp.2d 289, 297 (S.D.N.Y.2002); *see also Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd.,* 812 F.Supp.2d 186, 192 (E.D.N.Y.2011) ("A party establishes liability under [15 U.S.C. § 1125(a) ] if it can demonstrate (1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are likely to cause confusion.") (citations and quotation marks omitted).

█ Of importance, while 15 U.S.C. § 1114 "protects registered trademarks[,]" 15 U.S.C. § 1125(a) "is a broad federal unfair competition provision which protects unregistered trademarks[.]" *L'Oreal USA,* 2013 WL 4400532, at *14. In this regard, "[a]n unregistered mark ... can be protected under the Lanham Act if it

would qualify for registration as a trademark." *Lopez v. Gap, Inc.*, 883 F.Supp.2d 400, 414 (S.D.N.Y.2012) (citing *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 213 n. 2 (2d Cir.2003)). To qualify for trademark registration, a mark must be "either [ ](1) 'inherently distinctive,' where its intrinsic nature serves to identify its particular source; or (2) distinctive by virtue of having acquired a 'secondary meaning' in the minds of consumers." *Id.* (quoting *Artisan Mfg. Corp. v. All Granite & Marble Corp.*, 559 F.Supp.2d 442, 449 (S.D.N.Y.2008)). It "must also be 'used in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark'" and "must have been used in commerce, not merely adopted by the plaintiff." *Id.* at 414–15 (quoting *Gameologist Grp., LLC v. Scientific Games Int'l, Inc.*, 838 F.Supp.2d 141, 154 (S.D.N.Y.2011)) (emphasis removed).

Lastly, as suggested above, "[i]t is well-established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims." *Allied Interstate LLC v. Kimmel & Silverman P.C.*, 2013 WL 4245987 (S.D.N.Y. Aug. 12, 2013) (quoting *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F.Supp.2d 448, 456 (S.D.N.Y. 2005)).

In this case, the Plaintiff alleges in his Complaint that he has a registered trademark for his name, "James Van Praagh," which he has used in connection with his spiritual medium services for approximately twenty years. Thus, the James Van Praagh Trademark would constitute a valid mark for purposes of a trademark infringement claim pursuant to the Lanham Act, 15 U.S.C. § 1114(1)(a). *See New York State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*, 697 F.Supp.2d 415, 426 (W.D.N.Y.2010) ("A registered trademark, such as "NYSEG," that has been in continuous use for at least five years, is presumptively valid and entitled to protection.") (citing 15 U.S.C. § 1065; *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 534–35 (2d Cir.2005)).

The Plaintiff also claims to have an unregistered trademark for his surname alone, "Van Praagh." When a trademark involves a personal name, courts have held:

> Personal names used as trademarks are generally regarded as descriptive terms and are thus protected only if, through usage, they have acquired distinctiveness and secondary meaning. Once an individual's name has acquired a secondary meaning in the marketplace, a later competitor who seeks to use the same or similar name must take reasonable precautions to prevent the mistake. Still, determining what constitutes reasonable precautions or limitations entails a fact-intensive analysis that must be made with balance and the understanding that to prohibit an individual from using his true family surname is to take away his identity and is so grievous an injury that courts will avoid imposing it, if they possibly can.

*Shear Contractors, Inc. v. Shear Enterprises & General Contracting*, No. 1:09–cv–621 (GLS/DRH), 2010 WL 4781335, at *3 (N.D.N.Y. Nov. 16, 2010) (citing *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 104 (2d Cir.1985); *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 734–35 (2d Cir.1978)) (quotation marks, ellipses and brackets omitted). *See also Marks Organization, Inc. v. Joles*, 784 F.Supp.2d 322, 329 (S.D.N.Y.2011).

 Further "[i]n the context of surnames, additional circumstances may warrant consideration," because a surname "serve[s] the important function to its bearer of acting as a symbol of that indi-

vidual's personality, reputation and accomplishments as distinguished from that of the business, corporation or otherwise, with which he has been associated." *JA Apparel Corp. v. Abboud*, 682 F.Supp.2d 294, 311 (S.D.N.Y.2010) (citing *Madrigal Audio Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814, 823 (2d Cir.1986)). In the past, courts viewed every person as having "the absolute right to use his own name in his own business, even though he may interfere with or injure the business of another person bearing the same name"; however, today "the so-called sacred right theory that every man may employ his own name in his business is not unlimited." *Id.* (citations omitted).

▮ Here, the Complaint sufficiently alleges that "Van Praagh" is distinctive so as to qualify as a valid mark for the purposes of a claim for false designation of origin or unfair competition. Assuming, for the purpose of resolving this motion, that the factual allegations in the Complaint are true, the Plaintiff has allegedly been providing spiritual medium services under the surname "Van Praagh" for twenty years. In connection with these services, the Plaintiff has used "Van Praagh" for his books, websites, shows and seminars. Over the years, the Plaintiff, under the "Van Praagh" surname, has built himself a large following and is now one of the most-recognized purported psychics in the world. Accordingly, based on these factual allegations, the Court finds that the Complaint has adequately alleged that "Van Praagh" has acquired a secondary meaning in the marketplace in order to state a claim for false designation of origin under the Lanham Act, as well as an unfair competition claim under New York State common law.

▮ The Court also finds that the Complaint sufficiently alleges that the Defendant's use of "Van Praagh" is likely to cause confusion so that the Plaintiff's trademark infringement and false designation of origin claims survive this stage of the litigation. Indeed, the Plaintiff asserts that the Defendant, under the name "Lynn Van Praagh" or "Lynn Van Praagh–Gratton," has begun offering the same or similar spiritual medium services as the Plaintiff offers. She has used these names in connection with marketing she has done online through her website, Facebook page, Twitter account and YouTube channel. In the Court's view, "Lynn Van Praagh" and "Lynn Van Praagh–Gratton" could be considered similar to the Plaintiff's James Van Praagh Trademark and Van Praagh Trademark.

Moreover, according to her website, the Defendant, like the Plaintiff, travels across the country offering her alleged spiritual medium services. Also, her website suggests that she is from a family of psychics, and even mentions that some of her siblings have a spiritual gift. As such, the Court finds that it is possible that the Defendant's use of "Van Praagh" in association with her spiritual medium services may confuse a consumer into think that her services are in some way connected to or endorsed by the Plaintiff.

▮ Despite the Defendant's apparent request that the Court further inquire into whether the Complaint's factual allegations are sufficient with respect to the likelihood of confusion, the Court declines to do so. This is because "[l]ikelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." The *Name LLC v. Arias*, No. 10 Civ. 3212(RMB), 2010 WL 4642456, at *5 (S.D.N.Y. Nov. 16, 2010) (quoting *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.* 425 F.Supp.2d 402, 412 (S.D.N.Y.2006) (in turn, citing *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998))). *See also Peek & Cloppenburg KG v. Revue, LLC*, 2012 WL

4470556 at *5 (S.D.N.Y. Sept. 19, 2012) (quoting *DC Comics Inc. v. Reel Fantasy, Inc.*, 696 F.2d 24, 26 (2d Cir.1982) ("[A] likelihood of confusion is a question of fact as to the probable or actual actions and reactions of prospective purchasers of the goods or services of the parties.")); *Ritani, LLC v. Aghjayan*, 880 F.Supp.2d 425, 446 (S.D.N.Y.2012) (collecting cases).

Accordingly, the Court finds that the Plaintiff has stated claims for trademark infringement and false designation of origin claims under the Lanham Act, as well as for trademark infringement and unfair competition under New York common law. Thus, the Defendant's motion to dismiss these claims is denied.

### C. As to the Plaintiff's Claims for Trademark Dilution

■ The Plaintiff also brings claims for trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c) and New York law. "To prevail on a federal trademark dilution claim, a plaintiff must prove that (1) its mark is famous and distinctive, (2) its mark is used in commerce by the defendant, and (3) the defendant's use is likely to cause dilution through either 'blurring' or 'tarnishment.'" *Boarding School Review, LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921(DAB), 2013 WL 6670584, at *6 (S.D.N.Y. Mar. 29, 2013) (citing 15 U.S.C. § 1125(c)(1)). In this regard, "[d]ilution by blurring refers to the whittling away of the established trademark's selling power and value through its unauthorized use by others." *Study Logic, LLC v. Clear Net Plus, Inc.*, No. 11 CV 4343 CLP, 2012 WL 4329349, at *8 (E.D.N.Y. Sept. 21, 2012) (citing *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 111 (2d Cir.2010), *cert. denied*, —— U.S. ——, 131 S.Ct. 647, 178 L.Ed.2d 513 (2010)) (internal quotation marks, ellipses and brackets omitted). "Whether a mark or trade name is likely to cause dilution by blurring depends on factors including the similarity between the mark and the famous mark, the distinctiveness and degree of recognition of the famous mark, and whether the user of the mark or trade name intended to create an association with the famous mark." *Id.* (quoting *Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F.Supp.2d 186, 194 (E.D.N.Y.2011) (in turn, citing 15 U.S.C. § 1125(c)(2)(B))). "In contrast to dilution by blurring, dilution by tarnishment generally arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." *Id.* (citing *Tiffany (NJ) Inc.*, 600 F.3d at 111).

■ In New York, claims for trademark dilution are generally brought under NYGBL § 360–*l*. Under NYGBL § 360–*l*, "'[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief ... notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.'" In contrast with federal trademark dilution law, NYGBL § 360–*l* does not require that the mark be famous; requires only a mere likelihood of dilution; and requires that the marks are substantially similar. *Boarding School Review*, 2013 WL 6670584, at *8. Nevertheless, "[NYGBL § ]360–*l* has been interpreted to provide for protection against both dilution by blurring and tarnishment." *Id.* (citing *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir.2009)).

■ Here, in the Court's view, the Plaintiff has stated claims for trademark dilution under both federal and New York State law. According to his Complaint, the Plaintiff, using the name "James Van

Praagh," is recognized worldwide for the alleged psychic services he provides, which involves publishing books and appearing on widely syndicated television shows and at large conferences throughout the United States. Thus, the Complaint suggests that the James Van Praagh Trademark and the Van Praagh Trademark have been used in commerce and are famous and distinctive.

Moreover, the Complaint further alleges that the Defendant is using the "Van Praagh" name to offer her own spiritual medium services, which the Court finds could result in the dilution of the Plaintiff's marks, depending on what discovery reveals with respect to (1) whether the Defendant's use has impacted the selling power of the James Van Praagh and the Van Praagh Trademark and (2) the quality of the services offered by the Plaintiff while using the James Van Praagh Trademark and the Van Praagh Trademark as compared to those offered by the Defendant while using similar marks. The Court declines to further expound upon the dilution factor at this time, as to do so would require raising questions of fact, which would be inappropriate for this Court to address while resolving a Rule 12(b)(6) motion to dismiss. *See, e.g., Perkins School for the Blind v. Maxi–Aids, Inc.,* 274 F.Supp.2d 319, 326 (E.D.N.Y. 2003) (holding that the question of whether the defendant's selling of the plaintiff's product using a different warranty "may mislead or deceive a reasonable consumer probably is a question for the jury, not for this Court decide on a Rule 12(b)(6) motion to dismiss").

Therefore, the Defendant's motion to dismiss the Plaintiff's trademark dilution claims is also denied on the grounds that the Plaintiff has stated a valid claim under both the Lanham Act, 15 U.S.C. § 1125(c)(1), and under NYGBL § 360–*l*.

### D. As to the Plaintiff's Claim for Deceptive Acts and Practices

 Lastly, the Plaintiff brings a claim for deceptive acts and practices under NYGBL § 349. NYGBL § 349(a) declares that "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service" in New York are unlawful. "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir.2000) (per curiam) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)). "[A]n action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed.R.Civ.P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a)...." *Pelman ex rel. Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 (2d Cir.2005). The purpose of NYGBL § 349 is to " 'empower customers,' especially 'the disadvantaged' " and to "even the playing field of their disputes with better funded and superiorly situated fraudulent businesses." *Watts v. Jackson Hewitt Tax Service Inc.,* 579 F.Supp.2d 334, 346 (E.D.N.Y.2008) (quoting *Vitolo v. Mentor H/S, Inc.,* 426 F.Supp.2d 28, 33 (E.D.N.Y. 2006)).

 However, "the prevailing view in the Second Circuit is that 'trademark infringement claims are not cognizable under [NYGBL] § 349 unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement.' " *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.,* 887 F.Supp.2d 519, 543 (S.D.N.Y.2012)

(quoting *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615(CM), 2012 WL 1107648, at \*15 (S.D.N.Y. Mar. 30, 2012)) (internal ellipse and brackets omitted). Indeed, "[i]t is well-established that trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers for purposes of stating a claim under [NYGBL § ]349[.]" *Perkins School for the Blind,* 274 F.Supp.2d at 327 (citations and internal quotation marks omitted). Rather, "[i]njury or harm that satisfy this standard include potential danger to the public health or safety," indicating that "[c]ommercial claimants under [NYGBL] § 349 must allege conduct that has significant ramifications for the public at large in order to properly state a claim." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 277 F.Supp.2d 269, 273 (S.D.N.Y.2003) (citations and internal quotation marks omitted).

██ As the Complaint alleges no facts suggesting anything beyond the general consumer confusion normally found in a trademark infringement case, the Court finds that the Plaintiff has not met the threshold requirement of alleging that the matter affects the public interest in the State of New York. *Id.* (citing *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir.1995)). As such, the Plaintiff cannot sustain a NYGBL § 349 cause of action and this claim is dismissed.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Court denies the Defendant's motion to dismiss the Plaintiff's claims for (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), and New York law; (2) false designation of origin or unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and New York law; and (3) trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c), and New York law; and it is further

**ORDERED** that the Court grants the Defendant's motion to dismiss the Plaintiff's claim for deceptive acts and practices in violation of NYGBL § 349.

**SO ORDERED.**